## THE HOUSTON CITY STREET RAILWAY COMPANY V. GIACCOMO SCIACCA ET AL.

### No. 3078.

1. **Expert Testimony as to Matters of General Knowledge.**—Nonexpert witnesses after testifying to the facts were asked as to what the facts indicated as having caused the injury. The witnesses had not qualified as experts. The opinion of these witnesses as to how the injury was caused was incompetent. They had done all they could be permitted to do—to describe what they saw. It was the province of the jury to draw conclusions and form opinions from all the circumstances.

2. **Parents Suing for Damages for Death of Their Child.**—In a suit by the parents against a defendant for negligently causing the death of their son it is required that the jury apportion the damages recovered. This is required whether they sue jointly or if the husband sue alone. Rev. Stats., arts. 2903, 2904, 2909.

3. **Damages for Causing Death of Infant.**—The measure of damages because of the death of a young child would necessarily be indefinite. Absolute accuracy can not be attained, and hence the amount must be left to the sound discretion and common sense of the jury.

4. **Verdict Not Excessive.**—A verdict for $2000 for causing death of their son, a vigorous child aged 18 months, and apportioned equally between the parents approved.

5.   **Charge Approved.**—The trial judge instructed the jury: "No mental grief or agony can be computed in a case of this sort, but only actual compensatory pecuniary damages, if any, can be recovered; and in estimating damages the age and character of the child and its pecuniary benefit to plaintiffs up to its arrival to 21 years of age may be considered, after allowing all reasonable expense of its rearing and education for the same period." It was proper to refuse a repetition or to give anything conflicting with it.

6.   **Newly Discovered Testimony— Impeaching Witness. —** A new trial will rarely if ever be granted on account of newly discovered evidence, if the only object of the evidence be to impeach the credit of a witness.

APPEAL from Harris.    Tried below before Hon. James Masterson. The opinion contains a statement.

*Jones & Garnett,* for appellant.— 1.   The opinion of Holland and MacGregor, who had examined the child's head after it was killed, and knew the character of the wound upon the head, as to whether it was caused by being run over by the car wheel or by running against it, or in any other manner, was competent evidence in view of the testimony of plaintiffs' witnesses, and it was not necessary that they (Holland and MacGregor) should be experts (if indeed there could be experts on such a matter) in order to entitle them to testify.   Any witness could give the testimony sought from Holland and MacGregor if such witness had seen the child and examined the wound, and it would be for the jury to determine the weight to be given such evidence.   Railway v. Jarrard, 65 Texas, 565, 566; Whart. on Ev., sec. 511.

2.   The earnings of the child if it had lived and the benefits it could have conferred upon its parents would have been community property, to be recovered and controlled by the father alone, and the mother had no right to recover for this; and there being no evidence whatever in the case upon which a recovery for any damages could be based, the court erred in giving the charge complained of, which improperly influenced the jury, as shown by the verdict and judgment.   Rev. Stats., art. 2852.

*Frank S. Burke, John A. Kirlicks,* and *Henry F. Fisher,* for appellees. 1.   Witnesses must state facts and leave deductions and opinions to the jury.   Cooper v. State, 23 Texas, 336, *et seq.;* Thomas v. State, 40 Texas, 42; Railway v. Smith, 52 Texas, 186; Turner v. Strange, 56 Texas, 143; Kennedy v. People, 39 N. Y., 245, 256; Rogers' Exp. Test., sec. 4, p. 6, ed. 1883; 7 Am. and Eng. Encyc. of Law, 499.

2.   The admission or exclusion of immaterial testimony is not reversible error.    Nicholson v. Horton, 23 Texas, 47; Smith v. Hughes, 23 Texas, 249.

3.   Actions for damages for injuries resulting in death must be for the benefit of the surviving "husband, wife, children, and parents of

the deceased," and may be brought by all entitled thereto, or one or more for the benefit of all; the jury may give such damages as they think proportioned to the injury, and the amount so recovered shall be divided among the persons entitled to the benefit of the action.   Rev. Stats., arts. 2903, 2904, 2909; Railway v. Moore, 49 Texas, 31; Railway v. LeGierse, 51 Texas, 189; Railway v. Spiker, 59 Texas, 435; Railway v. Berry, 67 Texas, 238; Brunswig v. White, 70 Texas, 512; Railway v. Henry, 75 Texas, 220.

4.   In a case of this character the jury has the right, independent of extraneous evidence, to estimate the present and prospective value of a child's services to its parents, and the period for which such estimate may be made is not necessarily confined to the child's minority.   Railway v. Nixon, 52 Texas, 25; Railway v. Cowser, 57 Texas, 301; Brunswig v. White, 70 Texas, 511.

5.   Refusal of special charge which has been given in main charge is not reversible error.   Keeble v. Black, 4 Texas, 70; Oliver v. Chapman, 15 Texas, 409; Hicks v. Bailey, 16 Texas, 231; Brunswig v. White, 70 Texas, 512; 3 Sayles' Civ. Stats., art. 1319.

6.   New trial on the ground of newly discovered testimony will not be granted when such testimony is only to impeach or contradict the testimony of a witness who has testified on the trial of a case.   Herber v. State, 7 Texas, 72; Scranton v. Telley, 16 Texas, 192; Dansby v. State, 34 Texas, 394; Metzger v. Wendler, 35 Texas, 386; People v. Superior Ct., 5 Wend., 114; Hill. on New Trial, chap. 15, sec. 19.

COLLARD, JUDGE.—This suit was brought by Giaccomo Sciacca and wife against the Houston City Street Railway Company for damages for the killing of their infant son, aged 18 months, by the negligence of defendant's driver in running a car over the child, causing its death.   Plaintiffs recovered $2000 damages and defendant has appealed.

Plaintiffs lived in Houston on San Felipe Street and had a store there. The mother of the child says she put the child down to wait on a customer, her husband having gone down town to pay some bills, and in five minutes she turned around to look for it and she saw the car driver picking up the child from between the wheels of the car.   She never permitted the child to go out except in charge of herself or husband. It was in proof that the child's head was burst open or badly wounded, and that it died immediately.

Lula Greer testified that she had been to a store in the neighborhood to get some charcoal and was returning when she heard some one halloo "Stop that car."   She saw the mule run off the track, saw the car knock the child down and run over it.   The car was going out Dallas Street in direction of the cemetery and she was coming in an opposite direction.   Her attention was called by some one hallooing "Stop the car."   The car was in front of her; she looked up at it at the time; the

mule shied and ran off the track.   She was about a half a block away
when she heard the cry to stop the car, and when she looked up the
driver was not on the platform of the car and she didn't see him until
he ran out and turned the brake on the car.   She says he ran out after
the car struck the child.   She was on the same side of the car on which
the child was struck.

The driver was proved to be a competent and careful servant.   It
was in proof by William Ford, who with his father was walking twenty-
five or thirty yards behind the car, and saw the car run over the child.
"At least," he says, "the child ran out to catch the car, as it looked
to me where I was, and missed the car and fell under the wheel.   The
hind wheel ran over it and the gentleman who was driving the car got
off to pick it up, and he picked it up and laid it on the sidewalk. * * *
When the car got opposite to the child, who was standing in the street,
it ran to catch the car, missed, and fell between the wheels."   He
didn't see the driver at the time.   The driver stepped out immediately
after the child was struck, and the car had hardly ran over it before he
stopped it and picked the child up.   The car, he says, ran over its
head and cut its head wide open.   He (the driver) picked up the child
and laid it on the sidewalk, where its mother keeps a store.   The mother
was sitting outside the store with her back toward the street car.   The
child, witness says, was always playing in the street.

The driver testified, acquitting himself of all blame, that the child
was about two feet from the car when he first saw it, when he tried to
stop; thought it struck the hind wheel, as it was lying by the hind
wheel when he picked it up.   He did not think it was hurt much when
he picked it up, but he saw the child close his eyes as he had him in
his arms; he turned him over and then he saw the blood spurting out.
He took him to his mother.   He said if the dust had not been blowing
perhaps he might have seen the child in time.   He also said the mother
was sitting with her back to the car.   He says he was on the platform
of the car driving very slowly.   When he picked up the child he did
not see anybody about there.   He testified to many facts tending to
show that he was guilty of no negligence.   There was much more evi-
dence on both sides, but we have recited enough of it to explain the
errors assigned.

The first assignment of error is:   "The court erred in excluding, on
plaintiffs' objection, the evidence offered by the defendant from the
witnesses John Holland and H. F. MacGregor to prove that the injury
to the child's head from which it died (damages for whose death are
sued for by the plaintiffs herein) was not such an injury as would have
been caused to said child if its head had been run over by defendant's
car, and that if defendant's car had run over the child's head, as stated
by plaintiffs' witnesses Lula Greer, Anna Walker, and Anderson Jones,
the child's head would have been crushed on both sides; said evidence

so sought by defendant from said Holland and MacGregor being offered by defendant to contradict plaintiffs' witnesses and to corroborate the evidence of defendant's witnesses William Reddy and William Ford, all of which appears by defendant's bills of exception Nos. 3 and 4, which are referred to and made a part of this assignment of error."

MacGregor had testified that he had examined the wound on the child's head, describing it. He said "it had a cut on the side of its head; it was bent in; there was a broad crush in its head; thought the skin was broken so badly that the blood ran out, but it was not cut like a knife would cut it—it was a crush." The proposed answer of the witness was excluded by the court, as stated in the assignment of error, because the witness had not qualified as an expert, and it was proposed only to show his opinion.

The witness Holland had testified without objection that the skull was bruised and looked like it had been crushed in. "To the best of my recollection it was on the left side of the head; it was injured along the forehead. You could see that the bones were crushed in three-quarters of an inch; it was not bloody from the injury to any great extent; very little blood that I could see. The injury was on the forehead; skin broken some, the same as if a blow had cut it, but the skin was not broken on the back of the head."

Then it was that defendant's counsel asked the question and proposed the answer objected to, and the same objection was made and sustained as in the case of the witness MacGregor. Certainly nonexpert testimony was not admissible. The facts were simple and so far as we can see did not call for the opinion of any person, even that of an expert. The opinion of these witnesses was inadmissible. They had done all they could be permitted to do—to describe what they saw. It was the province of the jury to draw conclusions and form opinions from all the evidence and circumstances before them. Shelley v. City of Austin, 74 Texas, 608.

Appellant insists that the court erred in giving the following charge: "If you find for the plaintiffs, the measure of damages in cases of this sort is such pecuniary loss as they have sustained by reason of the injuries to their son, to be apportioned between the plaintiffs as you deem just and right."

It is contended that the charge is erroneous, because it admits of a recovery by the mother, there being no pleadings or evidence authorizing an award of any damages to the mother. The suit is joint by the husband and wife, and all the allegations are for and in the name of both of them. The husband could have sued for the benefit of both without joining his wife, in which case the jury would have been required to apportion the amount awarded between them. Rev. Stats., arts. 2903, 2904, 2909; Railway v. Henry, 75 Texas, 220; Railway v.

White, *ante,* 203. But the husband could have brought the suit and re-covered for both himself and his wife.

The evidence of the age, sex, vigor and prospective usefulness of the child applied as well to the mother's claim as to that of the father. The statute authorizes a recovery by the "parents" of the deceased. Rev. Stats, art. 2903. The fact that the recovery would be for the benefit of the community would not, as appellant seems to think, deprive the wife of her right in it. Damages would not be limited to the services of the child during minority, but would extend to such benefits as it might confer on its parents after majority. It was alleged and proved that the parents were poor, and on the testimony as to the age, sex, and healthy, robust condition of the child it was a question largely in the discretion of the jury as to what damages should be allowed either up to the time the child would reach its majority or afterward. The evidence of such damages because of the death of a young child would necessarily be in-definite. Absolute accuracy can not be attained, and hence the amount must be left to the sound discretion and common sense of the jury. In this case the jury awarded $2000, and apportioned it to the father $1000 and to the mother $1000. We can not say there was no evidence fur-nishing a basis for the estimate of damages made by the jury, consider-ing the character of the suit and the liberty allowed juries in such cases. Railway v. Nixon, 52 Texas, 25; Railway v. Spicker, 61 Texas, 431; Winnt v. Railway, 74 Texas, 35; Brunswig v. White, 70 Texas, 511, and authorities cited.

Error is assigned upon the refusal of the court to give the following special charge asked by defendant:

"Under the law the parent is entitled to the services and earnings of the child until he is 21 years of age. If the child should by the negligence of another, before he arrives at 21 years of age, be killed, then the parent would be entitled upon proving the death of said child from such negligence to recover from the party guilty of such negli-gence the earnings and value of the services of the child from the date of its death up to the time it would arrive at the age of 21 years, less the cost of raising and maintaining said child up to the time it would arrive at 21 years of age. The parent would not be entitled to recover anything for mental grief or suffering caused by the death, nor for any-thing except the actual pecuniary loss which the parents sustained by the death of the child."

On this subject (the measure of damages during infancy) the court, immediately following the clause of the charge hereinbefore quoted, instructed the jury as follows:

"No mental grief or agony can be computed in a case of this sort, but only actual compensatory pecuniary damages, if any, can be re-covered, and in estimating damages the age and character of the child and its pecuniary benefit to plaintiffs up to its arrival to 21 years of

·age may be considered, after allowing all reasonable expense of its rearing and education for the same period."

The court's charge contains every principle found in the requested charge that ought to have been given, and it was not necessary to repeat the same.

The last assignment of error is that the court erred in overruling the motion for a new trial. The motion was based upon newly discovered evidence, the object of which was to impeach the character of plaintiff's witness Lula Greer for truth and veracity; to show that she was a prostitute and that she was not present or near the place where the child was killed at the time, but was at another place drinking beer. The motion was sworn to and supported by affidavits of the impeaching witnesses. "A new trial is rarely if ever. granted on account. of newly discovered evidence if the only object of the evidence be to impeach the credit of a witness." Scranton v. Tilley, 16 Texas, 193. Such grounds are disregarded in equity. Graham & Waterman on New Trials, 1542, 1543; Metzger v. Wendler, 35 Texas, 386. The granting or refusing of a new trial on the ground of newly discovered evidence is to a great extent in the discretion of the trial judge, and his "refusal will not be revised by an appellate court unless it appear that such discretion has not been exercised according to the established rules of law and the principles of adjudged cases." Mitchell v. Bass, 26 Texas, 372.

We are not prepared to say that the trial judge in this case departed from the rules of law in refusing the new trial. His position was so much better than ours to judge of the merits of the motion, we do not feel authorized to say that he abused his discretion in the matter.

Finding no error on the trial, we conclude that the judgment of the lower court ought to be affirmed.

*Affirmed.*

Adopted March 24, 1891.