## GLOVER et al. v. PFEUFFER et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1914. Rehearing Denied Feb. 25, 1914.)

1. ADVERSE POSSESSION (§ 13*)—"PEACEABLE POSSESSION."

"Peaceable possession" is (by statute) such possession as is continuous and not interrupted by adverse suit to recover the estate, and hence the possession of plaintiffs, maintained against all the world except trespassers who entered and took possession of a part of the land, was peaceable where no suit was instituted.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 6, p. 5255; vol. 8, p. 7749.]

2. ADVERSE POSSESSION (§ 13*)—DEFINITION.

"Adverse possession" is (by statute) an actual and visible appropriation of land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 1, pp. 227–235; vol. 8, p. 7568.]

3. ADVERSE POSSESSION (§ 47*)—CONTINUITY—ENTRY OF OWNER.

Under the statute of limitations, the continuity of one's adverse possession cannot be broken by entry of the owner, but only by suit brought.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 234, 235; Dec. Dig. § 47.*]

4. ADVERSE POSSESSION (§§ 40, 58*)—POSSESSION EXCLUSIVE OF FORMER OWNER.

Under the statute of limitations, possession must be one adverse and hostile as to the owner, though not as against all the world; and such possession for ten years perfects a title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 148–183, 279–281; Dec. Dig. §§ 40, 58.*]

5. ADVERSE POSSESSION (§ 46*)—CONTINUITY—INTERRUPTION.

An adverse possession to perfect a title must be continuous and exclusive so far as the owner is concerned, and, if there is an interruption of possession, the statute of limitations is checked, because, on interruption, the possession of the owner, in contemplation of law, is at once resumed; but such principle is based on the fact that the land becomes vacant, and, if some one else other than the one claiming by limitation is in possession, it cannot be resumed by the owner upon any fiction of law.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 232–254; Dec. Dig. § 46.*]

6. ADVERSE POSSESSION (§ 48*)—CONTINUITY—ENTRY BY TRESPASSER.

Plaintiffs' peaceable and adverse possession as against defendants was not broken by an entry upon the land by trespassers without the consent and over the protest of plaintiffs, who ousted such trespassers; and such entry could not inure to the benefit of those claiming under such trespassers, since plaintiff was never disseised.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 236, 237; Dec. Dig. § 48.*]

---

† Application for writ of error pending in Supreme Court.

7. ADVERSE POSSESSION (§ 48*)—"DISSEISIN."

To constitute "disseisin" the person in possession must be forcibly expelled from the land, or there must be some act regarded in law as equivalent to an expulsion; a mere entry on another's land is no disseisin unless accompanied by expulsion.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 236, 237; Dec. Dig. § 48.*

For other definitions, see Words and Phrases, vol. 3, pp. 2123–2127.]

8. APPEAL AND ERROR (§ 843*)—REVIEW—ASSIGNMENTS OF ERROR.

Where the jury, in trespass to try title, made no finding on the issue of five years' limitation, assignments raising that question were immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. § 843.*]

9. APPEAL AND ERROR (§ 972*) — TRIAL (§ 106*) — REVIEW — DISCRETION OF TRIAL COURT—ARGUMENT.

The line and method of argument to be pursued by counsel in any stage of a trial is largely in the discretion of the trial court, and, unless an abuse of such discretion clearly appears, the court on appeal will not reverse the judgment simply because it thinks a different course should have been pursued.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3847; Dec. Dig. § 972;* Trial, Cent. Dig. § 267; Dec. Dig. § 106.*]

10. TRIAL (§ 133*)—HARMLESS ERROR—ARGUMENT.

In trespass to try title, where the court excluded all of the objectionable part of the argument for defendant and instructed the jury to disregard it, such argument was not prejudicial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

11. APPEAL AND ERROR (§ 637*)—RECORD—BILLS OF EXCEPTION.

In the absence of bills of exceptions proved as required by statute, only the bills as qualified by the trial judge will be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2784, 2829; Dec. Dig. § 637.*]

12. EXCEPTIONS, BILL OF (§ 54*) — RECORD — BYSTANDER'S BILL—"BYSTANDER."

Under Rev. Civ. St. 1911, art. 2067, providing that a bystander's bill of exceptions may be had by procuring the signatures of three respectable bystanders, citizens of the state, attesting the correctness of the bill, the term "bystander" means one who stands near, a spectator, one who has no concern with the business transacted, and, under no circumstances, can the attorneys for either party be bystanders; and hence a bill of exceptions attested by the attorney for appellants and by the attorney of part of the appellants on a former appeal could not be considered because not proved up by three bystanders.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 89; Dec. Dig. § 54.*

For other definitions, see Words and Phrases, vol. 1, p. 939.]

13. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMING FACTS.

In trespass to try title, a charge assuming that plaintiffs were in actual possession of the land when it was entered by trespassers, but concluding with the admonition, "If you find from the evidence that she, or they, were in possession of the same," was not objectionable as assuming such possession.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

14. TRIAL (§ 296*)—INSTRUCTIONS—CONSTRUCTION.

In trespass to try title, a paragraph of the charge attacked as assuming plaintiff's possession at a certain time should be read and construed in connection with the succeeding paragraphs as to possession.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

15. NEW TRIAL (§ 105*)—NEWLY DISCOVERED EVIDENCE—IMPEACHING EVIDENCE.

New trials are rarely granted for newly discovered testimony to impeach or contradict a witness for the opposite party.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 183, 221–223, 229; Dec. Dig. § 105.*]

16. NEW TRIAL (§ 116*)—MOTION—TIME.

A motion for a new trial, filed, without any affidavits, on the day before the court closed, did not give the opposite party an opportunity to answer, and might be overruled on that ground.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 238, 238½, 240, 241; Dec. Dig. § 116.*]

Appeal from District Court, Bexar County; R. H. Ward, Judge.

Action by Juan F. Rodriguez and others against Joe Priest and others, in which defendants H. B. Glover and Adele Glover filed a cross-bill against defendants Ida C. Pfeuffer, H. E. Hildebrand, and Joseph A. Burger. The issues as between all the others than the parties to the cross-bill were disposed of on appeal (126 S. W. 1187), and the case remanded for retrial on the issues under the cross-bill. Judgment was rendered for Ida C. Pfeuffer, Hildebrand, and Burger, and the Glovers appeal. Affirmed.

Henry E. Vernor, of San Antonio, for appellants. Wm. Aubrey, M. W. Davis, and Guinn & McNeill, all of San Antonio, for appellees.

FLY, C. J. This is the second time this case has been before this court, being reported as Rodriguez v. Priest, 126 S. W. 1187. On the former appeal the judgment was affirmed as to all the parties, except appellants and appellees herein, and as to all the land except the 37 acres herein involved. There is a full statement of the case in our opinion on the former appeal, and it need not be repeated. The cause was tried by jury and resulted in the following verdict: "We, the jury, render a verdict in favor of the defendant, under the plea of the ten years' statute of limitations." Upon which a judgment was rendered in favor of Ida C. Pfeuffer, H. E. Hildebrand, and Joseph A. Burger for the land in controversy and all costs of suit. This appeal was perfected by Adele Glover and her husband, H. B. Glover.

The first, third, fourth, fifth, sixth, seventh,

eighth, ninth, tenth, and twentieth assignments of error assail the sufficiency of the evidence to sustain the verdict of the jury, and necessitate a review of the evidence and the authorities bearing thereon.

The evidence for appellees shows that Hildebrand and Stribling went into possession of the land in controversy in 1895, that they fenced it, and had tenants in possession of it from 1895 to 1908, when the land was first claimed by appellants. It was testified by appellees that two men, Miller and Schorp, took possession of a part of the land in the latter part of 1899, and held possession of it until ousted therefrom in the early part of 1901. The action of trespass to try title, through which Miller and Schorp were ousted, was instituted in September, 1900, about a year after Miller and Schorp admittedly went into possession. The evidence of appellants was to the effect that Miller and Schorp were in possession of the land for five or six years before they were ousted, that they built houses and fences and cross-fences thereon, and exercised undisputed possession over the land. The reason given by Hildebrand for his delay in instituting proceedings to dispossess Miller and Schorp was that he was endeavoring to persuade them to leave. The tenants of Hildebrand and Stribling, with some exceptions, did not live on the land. None of the tenants testified, although it was stated that efforts were made to find them. Schorp was holding adversely to Hildebrand and Stribling up to the latter part of 1900, and Miller so held up to the time he was ousted in 1901. Appellee Hildebrand testified: "During the entire time Miller and Schorp were upon the land, we had tenants on the land. Ramirez was on there during that time. It was several months after Schorp and Miller went upon the land that we instituted suit against them. I tried to induce them to leave the land. They stayed, and, after I found they would not do it, there was nothing left except to bring suit. * * * I don't think it was long after they refused to vacate the land, when I couldn't induce them to leave peaceably, I had to resort to a suit. Miller always refused to leave the land. He said he was going to get title to the land, but Mr. Schorp spoke in a different way about it. He said if he couldn't get title to the land he didn't want it and he would get off and very shortly after he was satisfied after consulting his attorney who advised him he should get off and then it was a question of his time for leaving."

Henry Fest, a witness for appellees, testified that the land was fenced in 1896, and has been fenced ever since. He swore that the "shack" built by Hildebrand was not there when he went to Schorp's house on the land.

The evidence clearly indicates that Miller and Schorp were in possession of at least a portion of the land for perhaps a year, and that they built houses and lived thereon, and

Miller only left the land when expelled by an action of trespass to try. title. In order to obtain a title by limitation, it has been held that there must be adverse possession, not only as to the owner but as to every one. But in the case of Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153, it is stated that the Supreme Court does not "agree that it is always true that a possession in order to be sufficient must be adverse to the whole world." In that case the owner of the land was the state, but the rule would be applicable to one owner as well as another, it would seem. The court illustrates its holding in this way: "If one who had held such a possession for the requisite period" of time "should become the plaintiff in trespass to try title, the bare proof of the facts stated might not enable him to recover, since it would not show title against the world. If he should go further, however, and show that the title had been in one as to whom his possession had been adversely held, the question would arise whether or not he had acquired that title. As has arisen in the cases referred to, the question has been as to the sufficiency of such a possession as a defense, and we do not dissent from the view that it may be sufficient for that purpose."

[1, 2] This case, however, is not one where the defendant holds the land adversely to the one claiming it, but in subserviency to some other title; but the question is: What effect does the entry upon or occupancy of the land by a trespasser have upon the possession of the person seeking to perfect a title by limitations? We have been unable to find any authority bearing directly upon this point in this state, although it would seem that the question would have arisen in numerous instances. Under the evidence of appellees, which the jury found to be true, appellees were not ousted from the possession of the entire land by the two trespassers, but maintained their possession against all the world except the trespassers who entered and took possession of a portion of the land. Was the continuity of appellees' possession broken thereby? In Texas "peaceable possession" is defined as being such possession "as is continuous and not interrupted by adverse suit to recover the estate." Undoubtedly, the possession of appellees, under that definition, was "peaceable" because no suit was instituted. "Adverse possession" is defined to be "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The possession of appellees was evidenced by "an actual and visible appropriation" of the land for over ten years "commenced and continued under a claim of right inconsistent with and hostile to the claim" of appellants, unless the continuity of the possession was broken by the entry of trespassers upon the land without the consent and over the protest of appellees.

The trespassers were not holding for appellants, but their claim was just as antagonistic to the claims of appellants as to those of appellees.

[3] Under the common law the entry of the owner upon the land held by the person seeking to gain a title by limitations would interrupt the running of the statute, but the statute, hereinbefore quoted, has so changed the common-law rule that the continuity of possession cannot be broken by an entry of the owner, and a peaceable possession can only be interrupted by a suit being instituted and prosecuted. Shields v. Boone, 22 Tex. 193; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609. In the last-cited case the owner entered into possession of a part of the land and erected a fence so as to cut the party in possession off from the north one-half of the land. The latter in a few days tore down the fence and removed the material, and the suit was brought soon afterwards. Although the party claiming to own the land made an entry upon it and fenced one-half of it, the Supreme Court held: "Logan continued as before in the actual possession and use of the land, which was otherwise inclosed with other lands, as his pasture, and did not yield possession and was not ejected therefrom by the acts of Robertson. The latter never gained the possession of any part of the land, but the whole continued in Logan's possession." That is the law as to an entry by the owner, but that does not answer the question involved in this case, which is: Was the continuity of the possession of appellees broken by the entry of trespassers? If they had been representing the appellants, it is clear that the continuity would not have been interrupted. If they had been representing appellants, their entry upon the land would not have dispossessed appellees, and we fail to see that their entry as trespassers, who were not tolerated by appellees, should interrupt the possession of appellees so far as appellants are concerned.

[4] Recurring to the question of whether the adverse possession required by statute in order to perfect a title by limitation should be adverse as against the world or merely as against the owner, it may be stated that there has been considerable conflict of opinion among some of the Courts of Civil Appeals, which has been reconciled, however, by the case of Smith v. Jones, herein cited, and it is now the settled law of Texas that the possession must be one adverse and hostile as to the owner. Speaking on this subject, this court held, in Price v. Eardley, 34 Tex. Civ. App. 60, 77 S. W. 416: "If the statute required a possession adverse to the claims of every one, there might be some reason of the contention of appellants, but it does not, the clear intention being to require a possession adverse to the true owner." In that case the cases holding a contrary view were reviewed and practically overruled, and the Supreme Court refused a writ of error. The opinion has often been approvingly cited. Such being the law, and adverse possession of the land having been held by appellees for ten years, they perfected a title by limitation.

[5] The possession must be continuous and exclusive so far as the owner is concerned. If there is a break in the possession of him who seeks a title by limitation, the statute of limitation is checked, because when it ceases or is interrupted the possession of the owner, in contemplation of law, is at once resumed. That principle of law, however, must be based on the fact that the land becomes vacant, for if some one else, other than the one claiming the land by limitation, is in possession, it could not be resumed upon any fiction of law by the owner. There are a number of cases in which it was held that the entry upon and occupancy of land by squatters or trespassers in opposition to the wishes of the person in possession would not interrupt the running of the statute. Batchelder v. Robbins, 95 Me. 59, 49 Atl. 210; Chastang v. Chastang, 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45; Ballard v. Hansen, 33 Neb. 861, 51 N. W. 295.

If appellees in this case had been forcibly ousted by those who entered upon the land, from the entire land, and the trespassers had held the whole of it for a time sufficient to cause a break in the continuity of possession, there might be a basis for the claim that there was not continuous, adverse possession; but, according to the testimony of Hildebrand, he at no time was dispossessed of the entire land by Miller and Schorp, but at all times exercised acts of ownership over it and had it fenced. There was never a break in the possession of the land, which was adverse to appellants. When Schorp admitted that he could not hold adversely to appellees, his possession was that of appellees, and Miller was afterwards ousted.

In the case of Batchelder v. Robbins, herein cited, the Maine Supreme Judicial Court held: "As to the occupants of the little patches of ground used for gardens, these may well have been found by the jury either to have been occupiers by permission of the plaintiff, or that they were mere trespassers, squatters, not disseisors. Entries by such persons did not work an interruption."

In the cited case of Ballard v. Hansen, the Supreme Court of Nebraska held: "We do not understand that a mere stranger, having no interest in the premises, and claiming none, can interrupt the running of the statute."

In the late case of Point Mountain Lumber Co. v. Holly Lumber Co., 71 W. Va. 21, 75 S. E. 197, the Supreme Court of Appeals of West Virginia held, under a statute similar to that of Texas, that the entry of a stranger would not interrupt the continuity of possession. The court said: "But we do not think our statute should receive an interpretation

extending it to other than the owner of the legal title, and certainly not to the character of possession held or claimed by David McClanahan, the real point of decision in this case." Again, the court said: "John McClanahan having been in possession and actually residing on the land in controversy with inclosed and cultivated fields, if defendant relied on the protection of the statute, was not the burden on it to show that David McClanahan was occupying the land for it or under it? Would his occupancy as a stranger to the title claimed by it interrupt the continuity of John McClanahan's possession, or render it less exclusive of the owner of the better title? We think a proper construction of our statute requires an answer in the negative."

In the case of Inhabitants of Cohasset v. Moors, 204 Mass. 173, 90 N. E. 978, it was held that, when the party claiming title by limitation was in possession of the land by disseisin, "the effect of trespassers or entries upon the land by strangers, in reference to its interruption of her possession, was to be judged in the same way as if she had been the owner."

[6, 7] The possession of appellees being peaceable and adverse, so far as appellants were concerned, the entry upon the land by trespassers and squatters without the consent and over the protest of appellees could not inure to the benefit of appellants and did not interrupt the continuity of appellees' possession. The latter were never dispossessed of the land by the trespassers and they were ousted by appellees. There was no testimony tending to show that appellees ever acquiesced in the possession of the trespassers, and appellants can gain no advantage by their illegal act. Appellees were never disseised, because to constitute a disseisin the person in possession must be forcibly expelled from the land or there must be some act regarded in law as equivalent to expulsion. A mere entry on another's land is no disseisin unless it be accompanied by expulsion. Altschul v. O'Neill, 35 Or. 202, 58 Pac. 95.

The question as to whether appellees used reasonable diligence in expelling Miller and Schorp from the land was fairly and clearly submitted to the jury, and they found in favor of appellees. There was testimony that tended to sustain the verdict. It is not contended by appellants that the issue was not a proper one.

[8] As the jury made no finding on the issue of five years' limitation, assignments raising that question are immaterial. This disposes of the second, eleventh, twelfth, fourteenth, twenty-first, and twenty-second assignments of error.

It seems that the court gave special instruction No. 5, requested by appellants, and then withdrew it because it was deemed to be in conflict with the main charge, and that action is assailed by appellants on the sole ground that it was prejudicial to appellants

"since it was calculated to create the impression upon the minds of the jurors that appellants had trapped the trial court, or that the trial court was of the opinion that appellants ought not to recover." What the charge was does not appear in the statement, and there is nothing in the record to indicate that it was not properly withdrawn or that its withdrawal injured appellants.

[9, 10] The fifteenth assignment of error is based on objections to the argument of one of the attorneys for appellants. The court did not approve of the bill of exceptions as presented by appellants, and it appears from the statement of the trial judge that all of the objectionable part of the argument heard by the court was excluded and the jury was instructed to disregard it. The court heard no argument about the land being the "nest egg" of Miss Pfeuffer. As stated by the Supreme Court in Railway v. Garcia, 62 Tex. 289, cited by appellants: "The line and method of argument to be pursued by counsel in any state of a trial is subject largely to the discretion of the trial court, and, unless it appears very clearly that such discretion has been abused, this court would not feel authorized to reverse a judgment simply because it might be of the opinion that a different course should have been pursued."

[11, 12] No prejudice has been shown to have arisen from the arguments stated by the court to have occurred in his qualification of the fifteenth, sixteenth, and seventeenth assignments of error. In the absence of the bills of exception being proved as required by the statute, only the bills as qualified by the trial judge will be considered. In article 2067, Rev. Stats. 1911, it is provided that a bystander's bill of exceptions may be had by procuring the signatures of three respectable bystanders, citizens of this state, attesting the correctness of the bill. The term "bystander" means "one who stands near; a spectator; one who has no concern with the business transacting." Webster's Dictionary. Under no possible circumstances could the attorneys for either party be classed as "bystanders." In the case of State v. Jones, 102 Mo. 305, 14 S. W. 946, 15 S. W. 556, the matter in question was directly before the Supreme Court of Missouri, and it was held that an attorney in the case was not a "bystander" in the contemplation of the law. The court said: "The object of the statute in requiring the refused bill to be signed by three bystanders, respectable inhabitants, etc., was doubtless to obtain to such a bill the signatures of disinterested spectators, and not those whose interests are at war with such an attitude of indifference." One of the attesting witnesses to the bills of exception in this case was the attorney for appellants, and another was the attorney of part of the appellants on a former appeal of this case. The bills cannot be considered, because not proved up by three bystanders.

The eighteenth assignment of error con-

cerns itself about a matter utterly immaterial and it is overruled.

[13, 14] The nineteenth assignment of error assails the fifth paragraph of the charge of the court; the only ground of error set up demanding consideration being that the court assumed that appellees were in actual possession of the land when Miller and Schorp entered upon it. The charge does seem to assume such possession in the first part thereof, but it closes with the admonition, "if you find from the evidence that she, or they, were in possession of the same." This, we think, removed all ground of complaint. The paragraph assailed should also be read and construed in connection with the succeeding paragraphs as to possession.

The twenty-third and twenty-fourth assignments of error are disposed of adversely to appellants in the consideration of other assignments of error.

[15] The twenty-fifth assignment of error is as to newly discovered testimony, and is overruled. The evidence was sought merely to contradict the testimony of John Loustanau. New trials are rarely granted to obtain newly discovered testimony to impeach or contradict a witness for the opposing party. Scranton v. Tilley, 16 Tex. 183; Railway Co. v. Sciacca, 80 Tex. 350, 16 S. W. 31. The evidence was cumulative and contradictory to other witnesses of appellants, and was not probably true. Diligence was not shown in regard to the testimony.

[16] The motion for new trial was filed on January 31, 1913, the affidavits not being shown to have been filed, and the court closed on February 1, 1913. It has been held that a motion filed under such circumstances did not give the opposite party an opportunity to answer it, and the court is justified in overruling it on that ground. Railway v. Scarborough, 101 Tex. 436, 108 S. W. 804; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85.

The cross-assignments of error need not be considered.

The judgment is affirmed.