FLIPPEN–PRATHER REALTY CO. v. MATHER. (No. 7995.)

(Court of Civil Appeals of Texas. Dallas. Nov. 2, 1918. Rehearing Denied Dec. 14, 1918.)

1. DEATH ⬤⟿14(1) — NEGLIGENCE ⬤⟿7 — GROUNDS OF ACTION—BREACH OF DUTY.

In actions to recover damages for injuries to or the death of children, as in cases to recover damages for the death or injuries to adults, suit cannot be maintained unless defendant has been guilty of a breach of duty.

2. NEGLIGENCE ⬤⟿33(3)—DANGEROUS CONDITION OF PREMISES—DUTY OF OWNER.

Owner, who neither expressly nor impliedly invites public to come upon his premises, is under no obligation to keep them free from pitfalls or in a condition of safety for persons, whether adults or infants, who in pursuit of pleasure or convenience go upon or pass over such premises.

3. NEGLIGENCE ⬤⟿32(4)—PLACES ATTRACTIVE TO CHILDREN—LIABILITY OF OWNER.

If owner of premises invites or allures a child into a place of danger and negligently injures such child while there, he may be held liable, in the absence of contributory negligence for such injury.

4. NEGLIGENCE ⬤⟿39—PLACES ATTRACTIVE TO CHILDREN—EVIDENCE.

To warrant inference of implied invitation, the object or thing which induced injured person to go upon premises must, on account of its nature and surroundings, be especially and unusually attractive.

5. NEGLIGENCE ⬤⟿39—PLACES ATTRACTIVE TO CHILDREN—EVIDENCE.

If owner maintains upon his premises something which, on account of its nature and surroundings, is especially and unusually calculated to attract and does attract children, invitation of the owner may be inferred.

6. NEGLIGENCE ⬤⟿111(1)—PETITION—SUFFICIENCY.

In suit for death of a son about seven years old due to his falling into an open, unguarded well on defendant's vacant property, allegations of petition *held* to state a cause of action.

7. NEGLIGENCE ⬤⟿134(1) — PLACES ATTRACTIVE TO CHILDREN—EVIDENCE.

Jury finding that unguarded, open well on defendant's vacant property into which plaintiff's intestate, a son about seven years old, fell, was attractive to children by reason of its nature and surroundings, *held* warranted.

8. NEGLIGENCE ⬤⟿135 — CONTRIBUTORY NEGLIGENCE—CHILD—EVIDENCE.

In suit for death of a son about seven years old due to his falling into an open, unguarded well on defendant's vacant property, *held*, on the evidence, that son was not, considering his age and discretion, guilty of contributory negligence.

9. NEGLIGENCE ⬤⟿134(11)—CAUSE OF INJURY—EVIDENCE.

In suit for death of a son about seven years old due to his falling into an open, unguarded

well on defendant's vacant property, *held*, on the evidence, that negligence of defendant caused death of son.

**10. NEGLIGENCE ⊘=23(1) — TURNTABLE DOCTRINE—APPLICABILITY.**

The rule that owner cannot escape liability for resulting injury, where he places on his premises and leaves unguarded dangerous machinery unusually attractive to children, should not be restricted to injuries resulting from turntables.

**11. DEATH ⊘=99(3) — DAMAGES — EXCESSIVE DAMAGES.**

A verdict of $10,000 for the death of a healthy, robust, and bright son about seven years old, is not so large as to indicate that jury was actuated by improper motives, and will not be disturbed on appeal.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by V. K. Mather, for himself and wife, against the Flippen-Prather Realty Company. Judgment for plaintiff, motion for new trial overruled, and defendant appeals. Affirmed.

J. J. Eckford, of Dallas, for appellant. Cockrell, Gray, McBride & O'Donnell, of Dallas, for appellee.

TALBOT, J. V. K. Mather, for himself and wife, Nannie W. Mather, brought this suit to recover of appellant damages on account of the death of their son, Vernon Mather, who, at the date of his death, was between seven and eight years of age, which occurred April 24, 1916, by reason of the said Vernon Mather falling into a well situated on vacant property of appellant, known as block 65 of the Fourth installment of Highland Park, an addition to the city of Dallas, and drowning.

Appellee alleges: That said block 65 was subdivided into lots which were being offered by appellant for sale to the public for residence purposes; that said block, at the time Vernon Mather lost his life and for seven years prior thereto, was surrounded by opened, developed, and paved streets, being Beverly drive on the north, Byron avenue on the east, Princeton avenue on the south, and St. John's drive on the west. That on April 24, 1916, and for some time prior thereto, appellee resided with his family in block 84 of said Fourth installment, his residence being situated two blocks almost directly south from said block 65. That immediately north of block 65, and but one block therefrom, was situated the public schoolhouse, which was at the time of the accident in question and for several years prior thereto in use and patronized by the citizens of Highland Park, a suburb of the city of Dallas, having a very considerable population. That appellee's little boy, Vernon Mather, was among the children attending said school. That on the 24th day of April, 1916, and for years prior thereto, there was situated on block 65, and owned by appellant, an old, open, unused, and abandoned well, the presence of which was known to appellant. That there was no fence surrounding said block, and no safeguard or protection whatsoever around said well to prevent the egress thereto of small children. That the well was on the 24th day of April, 1916, more than 14 feet deep. That immediately surrounding the mouth of the well was a circular depression slightly lower than the surrounding surface of the ground, and on such depression small children attending school were accustomed to, and had been accustomed for a great while to, play. That said well was especially and unusually attractive to children, and actually did attract children, and particularly the small children attending the school a short distance away, who used the depression around the well as a "speedway," as they called it, chasing one another around it. That children were attracted by the water therein. That not only so, but that said block 65 on which the abandoned well was situated was especially and unusually attractive to children, as a great many flowers were growing and had been growing thereon, and small children, and particularly those attending school, were accustomed daily to frequent said block and gather flowers. That said block, being directly within the path of the children attending the school just north of it, was daily passed over and used by them in going to and returning from school, and in so passing over said block they were accustomed, and had been for a long time, to pass alongside said well. That appellant, knowing these facts, used no diligence or care to guard against the calamity to small children of falling into said well. That the location, surroundings, and condition of the premises and the condition in which said well was maintained, being especially and unusually attractive to children, constituted an invitation from appellant to children to enter upon said premises and to play around and about said well. That appellee's child, Vernon Mather, was among those accustomed to play in and around the well and to gather flowers on said block 65. That on April 24, 1916, said Vernon Mather in company with other small children attending said school, on account of the unusual attraction of said premises and particularly of said well, and being attracted thereby, went upon said vacant block 65 for the purpose of playing around the well, and in so playing, and in some manner unknown to appellee, Vernon fell into the well and was drowned. That the death of the said child was the result of the inexcusable and wanton negligence of appellant. That neither ap-

pellee nor his wife had any knowledge of the existence of the well until after the death of their child. Appellee further alleged that Vernon Mather was a robust, healthy, well-developed boy, strong physically, bright and quick mentally and a precocious and promising child, and that appellee and his wife had each been damaged by his death in the sum of $10,000.

Appellant answered by general and special demurrers, general denial, and plea of contributory negligence on the part of Vernon Mather. It also specially denied that children played on said block, or that it was attractive, but alleged that it was rough, vacant property covered with weeds and outside any city, and paved sidewalks had been provided for patrons of the school, and there was no necessity to use this block for any purpose; that the well in question was on the property when acquired by appellant, and this and other wells on its property were filled up by appellant; and that the fact that this well did not remain filled up to its top at the time of said accident was unknown to appellant.

The case was submitted to a jury upon special issues, and, in response to the issues submitted, the jury found that the well in question was especially and unusually attractive to children such as Vernon Mather, and dangerous to them; that Vernon Mather was attracted by it, and as a result of such attraction was caused to lose his life; that appellant was guilty of negligence in permitting the well to be upon the premises in a condition especially and unusually attractive and dangerous to children; that the sum of $10,000 paid in cash now would reasonably compensate appellee and his wife for having been deprived of the earnings and services of their child, Vernon Mather, during his minority, and of the pecuniary benefits that they might reasonably have expected would be rendered to them by said Vernon after he should have reached his majority, etc. In response to questions propounded at the request of the appellant, the jury further found that Vernon Mather knew of the existence of the well prior to the time he visited it and was drowned; that the "natural surroundings" caused Vernon Mather to visit the well at the time he was drowned; that appellant or its officers knew at the time of the accident, or by the exercise of ordinary care would have known, that children played around or about the well prior to the accident to Vernon Mather; that Vernon Mather exercised ordinary care and prudence in playing at and about the well in the way he did at the time he was drowned; and that appellant did not exercise ordinary care to prevent said well from being dangerous.

Appellant's motion for judgment, notwithstanding the verdict of the jury, was overruled, and judgment rendered in favor of the appellee for $10,000. Appellant filed a motion for a new trial, which being overruled, it appealed.

The contention of the appellant made under its 50 assignments of error may be summed up as follows: First, the appellee having failed to allege that the abandoned well in which appellee's son was drowned was so near to a public highway that a person using the highway would be injured thereby, or that the child was there on business with appellant or at its invitation, but it affirmatively appearing from the allegations of appellee's petition that the child was a trespasser or a mere licensee, fails to show a cause of action, and the court erred in overruling appellant's exceptions to the petition; second, the undisputed evidence showing that Vernon Mather, the son of appellee, at the time he was drowned in the well was upon appellant's property without invitation of appellant, and was not using or attempting to use the public highway, but was knowingly upon the private property of appellant, the well in which he was drowned not being substantially near the public highway, and said property being vacant property of the general character of like property in that vicinity, and appellant and its agents not knowing the actual condition of the well at the time of the accident, nor that persons used these premises for playing or for any other purpose, and the injury received by appellee's son not having been wantonly, willfully, or knowingly inflicted upon him, the court erred in not setting aside the verdict and judgment rendered against appellant; third, under the undisputed evidence, the court should have given appellant's special charge directing the jury to return a verdict for appellant; fourth, the court erred in overruling appellant's objections to the submission of the issues as to whether or not the well in question was especially and unusually attractive to small children such as Vernon Mather and was Vernon Mather attracted by it, because there was no evidence authorizing the submission of such issues; fifth, the court erred in submitting the issue, did appellant or its officers know at the time of the accident, or by the exercise of ordinary care would have known, that children played around or about the well in question prior to the time Vernon Mather was drowned, because the owner of vacant property upon which is a well not near a public highway does not owe to a person upon such property without his knowledge or consent the duty of exercising ordinary care to ascertain whether or not children played around or about such well; sixth, the jury in answer to the first special issue submitted, having found that the well was especially attractive, and in answer to special issue No. 2 requested by appellant having found that Vernon Mather was induced to go to the well because of the natural surround-

ings, which were the flowers, there is a direct conflict in the findings of the jury upon said issues; seventh, the finding of the jury that the appellant was guilty of negligence in permitting the well to be upon the premises in a condition especially and unusually attractive and dangerous to children was contrary to and unsupported by the evidence; eighth, the verdict of the jury awarding appellees $10,000 damages is excessive, because the only evidence of the earning capacity of Vernon Mather was that he was seven years and two months old at the time he was drowned, and a perfectly healthy, robust, and mentally bright child; ninth, the undisputed evidence showing that Vernon Mather did not know of the existence of the well prior to the time he visited it and was drowned, the finding of the jury that he did know of its existence before that time was contrary to all the evidence and without evidence to support it; tenth, the finding of the jury that Vernon Mather was induced to visit the well because of the natural surroundings is contrary to all the evidence; eleventh, the finding of the jury that Vernon Mather exercised ordinary care in playing about the well in the way he did, that is, such care as would reasonably be expected of a child of his age and discretion, was contrary to and not supported by the evidence.

[1] The leading questions raised and presented in the foregoing contentions of the appellant, or similar questions, have often been discussed and determined by appellate courts of the country, and the decisions are by no means uniform. It is well established, however, at least by the adjudicated cases in this state, that in actions to recover damages for injuries to or the death of children, as in cases to recover damages for the death or injuries to adults, the suit cannot be maintained unless the defendant has been guilty of a breach of duty. Mr. Elliott, in his work on Railroads, says:

He believes "the true rule to be that, although the age of the child may be important in determining the question of contributory negligence or the duty of the company after discovering him, the company is, in general, no more bound to keep its premises safe for children who are trespassers, or bare licensees not invited or enticed by it, than it is to keep them safe for adults."

[2] The general rule is also well established that the owner, who neither expressly nor impliedly invited the public to come upon his premises, is under no legal obligation to keep them free from pitfalls or in a condition of safety for those persons, whether adults or infants, who in pursuit of his own pleasure or convenience go upon or pass over such premises, even though it be with acquiescence of the owner. As said by Mr. Elliott:

"The licensee takes his license subject to its concomitant perils, and the licensor, as a general rule, owes him no duty except to refrain from willfully or wantonly injuring him, or to exercise ordinary and reasonable care after discovering him to be in peril." Elliott on Railroads (2d Ed.) § 1250.

[3] There is quite a difference, however, between a license and an invitation. If the owner of premises invites or allures a child into a place of danger and negligently injures such child while there, he may be held liable, in the absence of contributory negligence, for such injury. Instances of this character are found most frequently in cases where children were allowed upon the premises of railway companies by attractive machinery, such as turntables. Railway Co. v. Moore, 172 S. W. 568. The doctrine announced by our Supreme Court is that, if a person enters upon the private property of another by invitation of the owner, a lawful relation is thereby established, and the law imposes upon the owner in such case the duty of care for his safety; the degree of care being, ordinarily, reasonable care. Such invitation may be express or implied; but, in cases where it is sought to establish the fact of invitation from circumstances, it is often very difficult to determine the character of circumstances from which the fact of invitation can be inferred. Our Supreme Court does not subscribe to the broad proposition that, if the owner places or permits anything upon his property which is attractive to others and one is thereby induced to go thereon, an invitation to do so may be inferred as a fact by the court or jury. So it is held that, where the owner makes such use of his property as persons ordinarily do throughout the country, there is not, in legal contemplation, any evidence from which a court and jury may find that he has invited the party injured thereon, though it be conceded that his property or something thereon was calculated to attract him. Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111.

[4, 5] To warrant the inference of implied invitation, the object or thing which induced the person to go upon the premises must, on account of its nature and surroundings, be especially and unusually attractive. If therefore "the owner maintains upon his premises something which on account of its nature and surrounding is especially and unusually calculated to attract and does attract another (especially a child of tender years), the court or jury may infer that he so intended and hence invited him." So it has been said that where one exhibits on his own land near where children are likely to be pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment and cause him to venture thereon. "The owner of property, after he constructs or keeps thereon machinery, or other things

with which there is danger of contact resulting in injury to those coming thereon, may make himself responsible for their coming and consequent injury by some course of conduct calculated naturally to bring it about, and hence in such case there is a duty resting upon him to abstain from such course of conduct or else to take proper precaution to protect from injury those likely to be drawn into danger by it, and the failure to observe that duty, resulting in injury to one entitled to take advantage of it, is actionable. Therefore it is that the invitation, license, or allurement of others to come upon one's premises may give rise to a responsibility on his part, which without such invitation, license, or allurement, would not exist, for injuries sustained by them from dangerous things thereon against which he has not exercised ordinary care to guard them." Stamford Oil Mill Co. v. Barnes, supra. In the case just cited, it is further said that that which an owner keeps upon his premises may, in itself, have such powerful attraction for children or others incapable of exercising proper care for their own safety as to give rise to the duty to which we have referred; but this is not true of those things which the owners of property use in their ordinary business in the way in which men of ordinary prudence are accustomed to use them. Among the other cases illustrative of this rule are the following: Railway Co. v. Morgan, supra; Simonton v. Citizens' Electric Light & Power Co., 28 Tex. Civ. App. 374, 67 S. W. 530; Railway Co. v. Harlan, 39 Tex. Civ. App. 427, 87 S. W. 732; Williamson v. Railway Co., 40 Tex. Civ. App. 18, 88 S. W. 280.

[6, 7] The appellant was not making use of the well into which Vernon Mather fell and was drowned, in the usual and ordinary way that wells are used throughout the country. It was an entirely unused, unguarded, and abandoned well situated upon vacant and unused and unfenced land of appellant. In the view we take of the case, the allegations of the petition showed a cause of action, and appellant's demurrers were correctly overruled; and the evidence was sufficient to authorize and sustain the finding of the jury that by reason of its nature and surroundings it was especially and unusually attractive to children; that it was about 100 or 130 feet from one of the streets; that at the time Vernon fell into it, and during the spring and summer months prior and subsequent thereto, a variety of wild flowers grew in profusion upon the land upon which it was situated; that the well itself was especially attractive to children because of the frogs found sitting around on rocks or other substances near the top of the well at which they were accustomed to throwing, and because of the water in the well into which they would throw rocks and other missiles. North

of the well, and only about one block therefrom, was situated the public schoolhouse, in which at the time of the accident, and for several years prior thereto, a school was conducted and attended by a number of children, among whom for some time prior to the accident was Vernon Mather. For years prior to the accident resulting in Vernon's death, the well into which he fell was, with appellant's knowledge, upon its vacant land unguarded and unused. Recognizing the dangerous condition of the well, appellant had at one time attempted to fill it up, but negligently failed to do so. Many, if not all, of the children attending the public school near the well were at the time Vernon Mather was drowned, and for perhaps a year or more, accustomed to play about the well and on the vacant block of ground upon which it was situated and to gather wild flowers growing thereon. That children in considerable numbers were accustomed to play about the well and on the vacant block of ground upon which it was situated is undisputed in the evidence, and so frequently did they pass over this block of ground in going to and, returning from school that a well-beaten path appeared on the ground and close to the well. The water in the well was several feet deep and came within about two feet of the top. Surrounding the well was a circular depression slightly lower than the surrounding surface of the ground, and on this depression children were accustomed to play. They would not only throw missiles into the well, but would chase each other around the well. It does not appear by positive testimony that Vernon Mather knew of the existence of the well or played about it and upon the block of ground on which the well is located before the time he fell into the well and was drowned; but the facts and circumstances in evidence, we think, warranted the findings of the jury that he did, and that the well and its surroundings caused him to visit the well at the time he was drowned, notwithstanding it was suggested to him by little Willie Crawford, a playmate, that they go. There is positive and uncontradicted evidence that before Vernon fell into the well there was hardly an afternoon or night that he did not carry home to his mother a handful of wild flowers, and, as wild flowers were growing on the block of ground upon which the well was situated and the school children were in the habit of passing over and playing on said block, the reasonable presumption or inference is that he gathered these flowers on that block.

[8, 9] The evidence was further sufficient to sustain the findings of the jury that appellant or its officers knew at the time of the accident, or by the exercise of ordinary care would have known, that children played around or about the well at that time and prior thereto, and failed to exercise ordinary care to prevent the well from being danger-

ous; and that for one of his age and discretion Vernon Mather was not guilty of contributory negligence. The evidence relied on to sustain the aforesaid findings of the jury may not be as strong and satisfactory as could be desired, but clearly it is of such probative force that this court would not be warranted in declaring, as a matter of law, that there was no evidence to authorize and sustain said findings. It follows therefore that appellant suffered an unguarded, unused, and abandoned well, in no manner useful to it, but a dangerous pitfall for children, to be and remain on its premises for several years. The condition and surroundings of the well were such as to be especially and unusually attractive to small children, and did actually attract Vernon Mather and cause his death. The expense of filling up the well or guarding against its danger to children would have been trifling, and without injury to the property or its free use by appellant. The appellant knew of its condition, and that children were accustomed to playing around and dangerously near it, or the facts were such as to charge it with notice thereof; and under all the facts and circumstances in evidence we think it must be held that the negligence shown on the part of appellant caused the death of Vernon Mather, and that appellant should respond in damages therefor.

In Lumber Co. v. Thompson, 215 Fed. 8, 131 C. C. A. 316, L. R. A. 1915A, 731, the court held that—

"A property owner who leaves an open well unprotected on his property, to which, to his knowledge, actual or constructive, children resort to play, is liable for the death of a child who falls into it and is drowned."

Likewise, in Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321, the Supreme Court of Nebraska held that if the owner knew that there was an open well upon his premises and knew that children of such tender years as have no notion of the danger were continually playing around it, and he could obviate the danger with very little trouble to himself and without injury to the premises or interference with his own free use thereof, he owed an active duty to those children, and, if he neglected that duty and they fell into the well and were killed, it would be through his negligence.

[10] In the "turntable cases." decided in this state, it is held:

"The owner cannot escape liability for a resulting injury if he places on his premises and leaves unguarded dangerous machinery unusually attractive to children, even though the injured child was there without express permission."

And we heartily agree with the view expressed by the Court of Civil Appeals for the Sixth District in the case of Little v. James McCord Co., 151 S. W. 835, that—

"There is no sound reason for restricting that rule to injuries resulting from unguarded turntables."

The case is not ruled by Dobbins v. Railway Co., 91 Tex. 61, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, or by any case cited by appellant which is in conflict with the views we have herein expressed.

[11] Is the verdict excessive? It is undeniably large, but is not so large as to authorize this court to reverse the judgment because thereof, or require a remittitur. It has been held that absolute accuracy with respect to the damages in such a case cannot be attained; that it is extremely difficult, in fact impossible, in this class of cases, to procure expert testimony as to the value of a child's services, and therefore the amount must be left to the sound discretion and common sense of the jury. Railway Co. v. Sciacca, 80 Tex. 355, 16 S. W. 31; Railway Co. v. Measles, 81 Tex. 477, 17 S. W. 125; Railway Co. v. Bolen, 129 S. W. 860. In Railway Co. v. Measles, supra, it was said:

"As the case is one involving injury to a child of undeveloped faculties, it would seem to be only necessary to prove the willingness and capacity of the child, his age, and his relationship to the next of kin, and the extent to which he has been injured, leaving to the jury as 'men of knowledge and experience in relation to matters of common observation,' the task of assessing the pecuniary damages upon the facts proved."

It was shown in the case before us that Vernon Mather had never been sick; that he was a healthy, robust child, and bright mentally. The verdict is not so large as to shock the conscience or indicate that the jury in arriving at the amount awarded was actuated by improper motives. To disturb their finding as to the amount necessary to fairly compensate appellees for their loss would simply be to substitute our judgment for theirs, and, as it was their peculiar province to assess the amount of appellees' damages, we do not feel warranted in doing so.

Believing there is no reversible error disclosed by the record, the judgment of the district court is affirmed.