San Antonio & Aransas Pass Railway Company v. A. M. Manning et al.

Decided February 8, 1899.

1. **Evidence—Engineer's Report of Accident to His Company.**

Letters and reports written and made by an engineer subsequent to an accident as to what caused it and how it occurred, are not admissible in favor of the company where the engineer was a witness for it and testified in the case, especially if he has not been impeached.

2. **Same—Cross-Examination of Witness.**

A party is not prejudiced by the court's refusal to allow its counsel to ask a witness for the adverse party if he had told a falsehood in a statement out of court at variance with his testimony, where the witness had admitted that such statement was not true and had explained why he made it.

3. **Practice—Judicial Discretion.**

Where refusal of defendant's request for a postponement was within the sound discretion of the trial court, its action thereon will not be revised.

Appeal from Harris. Tried below before Hon. John G. Tod.

*O. T. Holt,* for appellant.

*Wheeler & Rhodes* and *Fisher, Sears & Sherwood,* for appellees.

Neill, Associate Justice.—This suit was instituted in the District Court of Harris County on November 30, 1897, by the appellees, Mrs. A. M. Manning for herself as surviving wife of Alvin S. Manning, deceased, and as next friend of Mamie Manning, his minor daughter, against the appellant to recover the sum of $30,000 damages for negligently causing the death of appellees' husband and father while in appellant's employ on the night of the 4th day of December, 1896, at Cameron, Texas.

The ground of negligence alleged, upon which appellees relied, is that Alvin S. Manning, in discharge of his duty as switchman in the employ of appellant, was, in the town of Cameron, on one of its box cars which was in motion, and while in the act of descending a ladder on the side of the car upon which he was riding, struck by another car which had been negligently and carelessly left standing on a side track too close to the track on which Manning was working to allow the train he was on

to pass with a switchman on the ladder, where his duty as such frequently required him to be; and that by reason of said obstruction he was knocked from the ladder with great force and violence, and fell under the cars of his train and was crushed and mangled to death.

The appellant, defendant below, pleaded (1) general denial; (2) that Manning's death was caused by his falling from the top of a freight car without any negligence on the part of defendant; (3) that if his death was caused by coming in contact with the car on the side track, it was on account of his contributory negligence, in that he knew and was advised of the situation of the yard and position of the cars at the time of his injury; (4) that his death was caused by falling from the top of a car while in the discharge of his duty, and that the accident was one of the ordinary risks incident to his employment, which he assumed when he undertook to work on said train as a switchman; (5) that his death was caused by the negligence of his fellow servants who were engaged in the same employment for a common purpose at the same time and place.

The case was tried before a jury and resulted in a verdict in favor of Mrs. A. M. Manning for the sum of $5000, and in favor of Mamie Manning the sum of $3000, upon which verdict the judgment was entered from which this appeal is prosecuted.

*Conclusions of Fact.*—On the 4th day of December, 1896, at 8 o'clock p. m., while engaged in the discharge of his duty as a switchman of defendant company, in the town of Cameron, A. S. Manning was killed, without any negligence on his part contributing to his death, by being knocked from a ladder attached to the side of a box car which he was descending in pursuance of his duty, by a car which had by the negligence of appellant company been placed and was on a side track so near the track upon which the train Manning was on was being operated as not to leave sufficient space for Manning in descending the ladder as aforesaid to pass without being struck and knocked off. It was dark when the accident occurred, and Manning could not see the car which knocked him from the ladder, and did not know of its dangerous proximity.

Mrs. A. M. Manning is the surviving wife of deceased, A. S. Manning, and Mamie Manning is his minor daughter, and during his life both appellees were supported by him. By the negligence of appellant in causing his death, appellees were damaged in the respective amounts found by the jury in their favor.

*Conclusions of Law.*—A number of the assignments of error complain of the refusal of the trial court to give certain special charges asked by appellant. As the questions raised by these assignments depend largely upon the sufficiency of the main charge of the court and special charges given at request of appellant, we will for convenience here insert such charges as were given. They are as follows:

"The jury are instructed: First. That negligence is the failure to exercise ordinary care. That ordinary care is such a degree of care as an ordinarily prudent person would have exercised under the same or like circumstances.

"Second. Contributory negligence is defined to mean such negligence of a person injured as, concurring with the negligence of the person causing his injury, contributes to cause the injury received.

"Third. All persons who are engaged in a common service of a railway corporation, and who, while so employed, are in the same grade of employment and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such corporation with any superintendence or control over their fellow employes or with the authority to direct any other employe in the performance of any duty of such employe, are fellow servants with each other. Employes who do not come within the foregoing definition are not fellow servants.

"Fourth. It is the duty of a railway company to use ordinary care in the operation and management of its trains and cars so that their employes shall be reasonably safe in the discharge of their duties; and should they fail to exercise such care and their employes be injured thereby, without fault on the part of such employes, then the railway company is not responsible for such injuries.

"Fifth. That if from the evidence they do not believe that the death of the deceased, A. S. Manning, was caused by the failure of the defendant to exercise ordinary care in the management and operation of its cars, then they need inquire no further, but find for the defendant.

"Sixth. But if from the evidence the jury believe that the defendant company placed cars upon the side track or switch in such a manner that the deceased, A. S. Manning, while in the discharge of his duties as employe of defendant, was struck by same and thereby received the injuries which caused his death, and that the placing of said cars at such place and in the condition and circumstances under which they were placed there was negligence on the part of the defendant, and that said A. S. Manning at the time he was injured was in the exercise of ordinary care on his part, then you will find for the plaintiffs and assess their damages as hereinafter directed.

"Seventh. That if from the evidence the jury believe that the deceased, A. S. Manning, at the time he was injured failed to exercise ordinary care to avoid injury to himself, and that the failure on his part to exercise ordinary care contributed to causing the injuries he received, then said A. S. Manning was guilty of contributory negligence and the plaintiffs can not recover, even though the jury from the evidence may believe the defendant to have been also negligent.

"Eighth. That the deceased, A. S. Manning, in entering upon the employment of a switchman with the defendant company assumed such risks and dangers as are ordinarily incident to the employment of a switchman, and that if from the evidence the jury believe that the injuries which resulted in the death of said A. S. Manning were caused

by one of the risks or dangers which were ordinarily incident to his employment as a switchman, then the plaintiff can not recover.

"Ninth. That if from the evidence the jury believe that the injuries which the deceased Manning received were caused by the negligence of a fellow servant of said Manning, as that term has heretofore been explained to you, then the defendant is not liable.

"Tenth. That if from the evidence the jury believe that the yard-master P. O'Connell was intrusted by the defendant with the authority of superintendence, control, and command of the deceased, Manning, while acting in his capacity as switchman for the defendant, and with authority to direct said Manning in the performance of his duty as such switchman, then said O'Connell was a vice-principal of the defendant and not a fellow servant of the deceased, Manning, and any negligence that the jury find said O'Connell to have been guilty of would be the negligence of the defendant.

"Eleventh. That if from the foregoing instructions the jury find for the plaintiffs, then the measure of damages is the pecuniary loss, if any, which the plaintiffs have sustained by reason of the death of the deceased. And in case you find for the plaintiffs you will confine yourselves to their loss in a pecuniary way, and will not consider grief, sorrow, or loss of companionship which the plaintiffs have sustained by the death of said Manning. And you will apportion same between the plaintiff Mrs. A. M. Manning and the minor plaintiff Mamie Manning in such amounts as from the evidence they believe to be just."

These are the special charges given at appellant's request, which for convenience we have numbered in the order here inserted:

1. "You are charged that the plaintiffs in this case could not recover if the deceased could not recover if he had not been killed, and sued to recover damages for the injuries received. The plaintiffs are in the same position or situation that the deceased himself would be in if he were living and had a right of action against the defendant for said injuries."

2. "If the jury believe from the evidence that the said Alvin S. Manning fell from the top of a car and was injured, then you will find for the defendant."

3. "The plaintiffs can only recover upon the allegations in their petition and the proof thereof, the burden of proof being on them, and if they have not shown by a preponderance of the evidence that the accident happened as alleged in their petition, then you will find a verdict for the defendant."

4. "The term preponderance of the evidence, as used in this charge, has reference not to the number of witnesses, but to the greater weight of credible evidence, and the jury are the exclusive judges of the evidence and the credibility of the witnesses."

5. "The jury are charged that if they believe from the evidence that Alvin S. Manning while in the discharge of his duty attempted to get off the train on which he was riding and came in contact with a car on

the side track, and you further believe that by the exercise of ordinary care he could have seen said car, or if you believe that he knew that the said car was there, then in that event he can not recover, and you will find for the defendant."

1. The failure of the trial court to give the following special charge requested by appellant is assigned as error:

"If the jury believe from the evidence that the car on the side track was placed and put there by the deceased, Alvin S. Manning, or that he knew that the same was too close, and he attempted to go down the ladder of the car on the main line, and was injured by reason of coming in contact with the car on the side track, this was one of the risks he assumed, and he can not recover, and you will find a verdict for the defendant."

The evidence did not warrant the court in submitting to the jury the question as to whether the car on the side track which caused Manning's death was placed there by him. It shows beyond contradiction that it was placed there by O'Connor, who was appellant's yardmaster and vice-principal, under whom the deceased was working, and that Manning when the car was placed there was about 160 feet distant therefrom, near a compress, where he had gone in obedience to an order of O'Connor to throw a switch so as to enable the engine to go in on the compress track to pull out and place on the main line nine carloads of cotton. The other questions requested to be submitted in this special charge were laid before the jury in the special charge which we have numbered 5, above copied.

2. The appellant asked the court to give this special charge:

"The jury are charged that unless the plaintiffs have proved that the deceased, Alvin S. Manning, was knocked off and injured by the negligence of the defendant, then you will return a verdict for defendant."

This charge was substantially given in special charge which we have numbered 3 above inserted. By it the jury are told that plaintiffs "can only recover upon the allegations in their petition and proof thereof, * * * and if they have not shown by a preponderance of the evidence that the accident happened as alleged," to find for defendant. Under this the alleged ground of negligence is kept in view, and the jury were required to find for defendant unless plaintiffs proved that Manning was knocked off the ladder and injured by its negligence. From the evidence he must have either been knocked off the ladder as alleged by plaintiffs, or have fallen from the top of the car as contended by defendant. By special charge number 3 as numbered by us, the jury are told that if they believe from the evidence that he fell from the top of the car and was injured, to find for the defendant.

3. The appellant asked the court to give the following special charge:

"The jury are charged that the burden of proof is on the plaintiffs to prove all the material allegations in their petition by a preponderance of the testimony, and the fact that allegations are made in the petition, unless they are proved as alleged, they can not recover." Its refusal is

assigned as error. Its substance is given in special charges which we have numbered 3 and 5 before copied.

4. Refusal of the court to instruct the jury at the instance of appellant as follows,—"If the jury believe from the evidence that the deceased, Alvin S. Manning, was familiar with the tracks, and that it was his duty to switch cars and set them in on the side track, then you are charged that if by the use of ordinary care he would have known, or did know, that the said cars were too close to the main track, and undertook to go down the ladder of said car on the main track and came in contact with the car on the side track, then this is one of the risks incident to the employment, and you will find a verdict for the defendant,"—is assigned as error. The substance of this charge was embodied in paragraphs Nos. 7 and 8 of the general charge and special charge number 5 as numbered above hereinbefore copied. Hence we hold that the assignment of error is not well taken.

5. Appellant was not prejudiced by the court's refusal to allow appellant's counsel to ask witness O'Connell if he had told a falsehood (in his statement made to others soon after the accident) when he stated that he did not see the deceased killed. In his testimony the witness O'Connell admitted that the statement made by him to other employes of appellant immediately after the accident was not true. As to this his testimony is as follows: "I left the cars there. I knew the fault rested on me, but for my own protection I did not tell it; I knew that I could not work ten minutes for them if I stated that. I know I left the cars there. I have told you why I made the false statement. You may say if you want to that why I made that statement was they asked me the question and I answered it. I knew that I was not stating a fact, but I was telling a falsehood. I knew what I was doing. I knew I was making a statement for my own protection. It was no fault of Manning's that he got hurt. I put the cars there, and I most probably have been at fault." It is evident that counsel for appellant expected by the question to elicit from witness the answer that he told a falsehood and knew it at the time. It is above seen that the witness stated during the progress of the trial that his statements made shortly after he accident, in which he said he did not see Manning killed, were false. His explanation, as seen from the record, of why he made the false statement is very full. It was made, according to what he says, for the purpose of retaining his employment with appellant in order that he might support himself and family. His "bread and butter" depended upon it, and he knew he would lose his employment if he told the truth.

6. The court properly refused to allow appellant to read in evidence letters and reports made by Engineer Barnhart subsequent to the accident, as to what caused it and how it occurred. Such letters and reports were purely hearsay. Barnhart was a witness for appellant and testified in the case, and his version as to the cause of the accident was given by him to the jury in evidence. He was not impeached. Had he

have been, we do not think evidence as to what he said shortly after the accident occurred could have been given in corroboration of his testimony.

7. At one time during the progress of the trial the witness O'Connell was placed upon the stand by appellant's counsel and asked to state "Whether or not he had stated to one J. W. Meyers at Cameron, within the last month, that if the company did not re-employ him he would make a bad or damaging witness against the company on the trial of this cause." An objection to the question made by appellee's counsel was sustained by the court. Its ruling is assigned as error. The question it seems to us was admissible for the purpose of laying the predicate to impeach O'Connell. At a subsequent stage of the trial when O'Connell was on the witness stand the same question was asked him by appellant's counsel, and he answered it in the negative. Therefore, if there was error in first excluding the question, it was cured by subsequently allowing it to be asked and answered. When the question was last asked and answered Meyers was in attendance on the court as a witness, and appellant's counsel failed to place him upon the stand to contradict or impeach O'Connell.

8. We believe that the remarks of counsel complained of in appellant's twenty-first and twenty-second assignments of error were justified by the evidence and legitimate in argument.

9. As the trial of the cause continued beyond the time, it was asked by appellant's counsel to be postponed in order to allow them to procure a witness. Appellant was not prejudiced by the court's refusal to grant appellant's request to postpone the trial of the case for the purpose of obtaining the attendance of said witness. Besides, it was within the sound discretion of the court to grant or refuse the request, and its action thereon is not subject to review.

Appellees' case did not depend solely upon the testimony of the witness P. O'Connell. There was circumstantial evidence which strongly tended to show that the accident was caused by appellant's negligence, as averred in appellees' petition and as testified to by O'Connell.

It is not the province of this court to pass upon the credibility of witnesses. That is within the domain of the jury. Mr. O'Connell was before them. They heard his testimony and saw him when he gave it. They evidently believed his testimony was true, and though he made statements subsequent to the accident wholly at variance with it, we must take the verdict of the jury as conclusive,—his evidence, if true, being amply sufficient to sustain it.

There is no error assigned requiring a reversal of the judgment appealed from, and it is affirmed.

                                                    *Affirmed.*

Writ of error refused.