SAN ANTONIO TRACTION CO. v. YOUNG
et al.

(Court of Civil Appeals of Texas. San Antonio.
Nov. 22, 1911. Rehearing Denied Dec. 20,
1911.)

1. APPEAL AND ERROR (§ 1040*)—HARMLESS
ERROR—EXCEPTIONS TO PLEADING.

Any error in overruling an exception to
part of the petition was harmless to defendant
where the issues were fairly submitted to the
jury, and it does not appear that the matter
complained of came to the jury's attention.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4089–4105; Dec. Dig. §
1040.*]

2. STREET RAILROADS (§ 117*) — DEATH OF
CHILD ON TRACK—JURY QUESTIONS.

In an action against a street railroad com-
pany for death of a child struck by a car, held,
under the evidence, jury questions whether the
company was negligent, or the child was guilty
of contributory negligence.

[Ed. Note.—For other cases, see Street Rail-
roads, Cent. Dig. §§ 239–257; Dec. Dig. §
117.*]

3. STREET RAILROADS (§ 93*)—INJURY TO PE-
DESTRIANS—LIABILITY.

A street railroad company is liable for in-
jury to a pedestrian resulting from breach of
the company's duty to know that its track is
clear, unless the injured person was guilty of
contributory negligence, or went upon the track
so near the approaching car that the motor-
man, by using ordinary care, could not have
avoided the injury after the person was seen or
might have been seen.

[Ed. Note.—For other cases, see Street Rail-
roads, Cent. Dig. §§ 195–200; Dec. Dig. § 93.*]

4. EVIDENCE (§ 588*)—WEIGHT—CREDIBILITY
OF WITNESSES.

A jury can believe or disbelieve any wit-
ness giving contradictory testimony.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2437; Dec. Dig. § 588.*]

5. TRIAL (§ 139*) — PROVINCE OF JURY —
WEIGHT OF EVIDENCE.

Where the evidence raises a substantial
issue of fact, its weight is for the jury, and not
for the court.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 332, 333, 338–341; Dec. Dig. § 139.*]

6. DEATH (§ 99*)—INFANTS—DAMAGES—EX-
CESSIVENESS.

Three thousand five hundred dollars to
each of the parents of a boy under 11 years old
was not excessive recovery for his negligent
death where he was unusually large for his age,
intelligent, and greatly assisted his parents in
their work.

[Ed. Note.—For other cases, see Death, Cent.
Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, Bexar Coun-
ty; T. T. Vander Hoeven, Special Judge.

Action by Elmer E. Young and another
against the San Antonio Traction Company.
Judgment for plaintiffs, and defendant ap-
peals. Affirmed.

Ogden, Brooks & Napier, for appellant.
Augustus McCloskey, Perry J. Lewis, and H.
C. Carter, for appellees.

COBBS, J. This suit was brought by El-
mer E. and Annie M. Young for damages
against appellant for the death of their minor
son, Freddie Young, who was alleged to have
been negligently run down and killed by one
of appellant's street cars. The judgment of
the jury was $3,500 for each of the plain-
tiffs, aggregating $7,000.

[1] The first assignment of error is, "The
court erred in overruling defendant's second
special exception," and the proposition there-
under is: "The law does not render the de-
fendant liable for damages merely because it
could have discovered a person's peril by the
exercise of ordinary care, but the peril of a
person in danger must have been actually
discovered before such new duty is imposed;
and the fact that the court overruled an ex-
ception to such an allegation and permitted
it to be read to the jury and to remain as a
part of the petition was misleading, in that
it tended to produce in the minds of the jury
the idea that the defendant was liable, if
it failed to exercise ordinary care to dis-
cover the position of the plaintiffs' son."
There is no complaint whatever as to the
court's charge anywhere in submitting the
issues; but, as we understand it, the appel-
lant submits his case upon several theories:
First, the supposed error in not sustaining
this objection; second, in not granting a new
trial because the great preponderance of evi-
dence shows that defendant was not guilty
of negligence causing death of the child; the
third to the same effect; fourth, the verdict
was excessive; fifth, the verdict was the re-
sult of passion.

Let us see what was alleged by plaintiff
in the paragraph, the portion which the ap-
pellant claims was error in the court not
to sustain its objection. The paragraph is
as follows: "Plaintiffs further aver that at
the said intersection of Marshall street and
North Flores street it was the duty of de-
fendant's employés, in charge of said car,
to have said car under control, to sound the
gong, and keep and maintain a lookout for
persons using said streets, and plaintiffs
aver that defendant's said employés in charge
of said car knew, or by the exercise of ordi-
nary care would have known, that plain-
tiffs' son was in a perilous position in time
by the use of the means at their command
to have stopped said car before striking him,
or to have so slowed its speed that he would
not have been run down and injured, and
defendant's said employés negligently fail-
ed to stop said car or so slow its speed as
to prevent striking plaintiffs' said son and
injuring him, but negligently propelled said
car against plaintiffs' son, and negligently
dragged his body a considerable distance aft-
er he was struck." In reading the petition
as a whole in connection with this para-
graph, we cannot see that any harm could
come to appellant were its contention cor-

rect, which we do not believe, because all the issues were fairly submitted by the court in its charge to the jury, and it was the duty of the jury to be governed by the court's charge, and it is not shown that the jury were influenced by the allegations in the petition at all, or that the matters complained of were in the manner pointed out submitted to the jury at all. Michael v. Rabe, 120 S. W. 565.

[2-4] The appellant really presents its case under the second and third assignments of error, and they are as follows:

"Second Assignment of Error.

"The court erred in overruling defendant's motion for a new trial, because the great preponderance of the evidence shows that the defendant was not guilty of negligence causing the death of plaintiff's son, Freddie Young.

"Third Assignment of Error.

"The court erred in overruling defendant's motion for a new trial, because the verdict of the jury is contrary to the law and the evidence, in this: the great preponderance of the evidence shows that the plaintiffs' son, Freddie Young, jumped or ran immediately in front of a moving car, so close thereto that it was impossible for the motorman to have stopped the car in time to have prevented killing him, and that his death was caused by the act of the said Freddie Young in jumping in front of said car, and not through any negligence on the part of this defendant."

Where the accident happened was the intersection of North Flores and Marshall streets, where there is a schoolhouse. The school had just recessed, and many small children were on the street on their way to dinner. Some were playing, and they were not conscious of, nor did they appreciate, the danger from the approaching cars. On North Flores street is a double track taking up a good part of the street. On east side is a ditch where sidewalk would ordinarily be, and where accident happened was from three to six feet from curbing of the ditch, and the strip between track and ditch curbing narrows as you go northward on Flores street. Some of the little boys were playing on this narrow strip, and were seen by appellant's employés a considerable distance before the point was reached. This was the condition as the car was approaching, and the little boy was running and playing across the track, he and the car going in the same direction, and, the farther the child went, the narrower became the strip of street between the ditch and the track, and, while thus running and angling across the track with his back to the car, he was knocked down and dragged from 20 to 30 feet, and was killed. There was testimony that the car was crossing at a rapid speed at this intersection and particular place, and not under control. There was testimony that no gong was sounded or alarm given. The child did not look back or know of the approaching car. The dying child said: "Papa, it wasn't my fault. I couldn't help it. I didn't see the car, and didn't hear it."

The motorman himself said: "I saw the children had been running hither and thither upon the track and across the track playing. There had not any of them crossed when I got in sight. I suppose I had a plain view there of 100 yards, something like that—I expect I had ample time to see 100 yards ahead of me." He also said a car running five miles an hour could be stopped within five feet. "If I had had 10 feet, I could have stopped the car before striking him, and, if there had been 15 feet, it would have been easy to stop." The conductor knew a school was there and time to let out for dinner; saw the children there; saw children running after Freddie; thought they were playing some kind of game, was watching the boys. It was shown the car was running fast, and the boy running on the track in front 25 or 30 feet ahead, with his back to the car, running ahead of two or three boys running along the ditch after him. The car did not ring the bell or give any sound. This is, in substance, part of plaintiffs' testimony. The motorman testified when he first saw the boy he was on the sidewalk; crowd of boys on the sidewalk; did not know he was going to get on the track; jumped off sidewalk, was right up against the fender. When he first discovered that he was going to get on the track, reversed car and did all he could to stop it, and applied brakes. The car ran about five or five and a half, or six feet, something like that after the boy got on the track. The conductor testified to the same effect, as did passengers on the car, also that signals were given. Some testimony on part of plaintiffs was to the effect that the boy was playing about 25 feet ahead of the car, and the car had gotten a pretty good start. Some one hallooed at the boy, and with that he turned and faced towards the car, and the car was on him.

So we have a case of conflict in the testimony. We could not spare the space to quote the testimony more fully, pro and con, but each side supports his theory. It may be assumed as a matter of law that it is the duty of a street railway company to know that the track in advance of its car is clear, and that it will be liable for any injury resulting from the want of this knowledge, unless its liability is defeated by contributory negligence of the person injured, or unless it appears that the person injured went upon the track so near the approaching car that the driver, by the exercise of ordi-

nary care, could not avoid the injury after the person was seen, or might have been seen. Railway v. Hewitt, 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32; Street on Personal Injuries in Texas, § 297 et seq.

[5] The evidence in this cause was sufficient, and would support a verdict either way, for the jury were the judges and had the right to believe or disbelieve any of the witnesses.

What is meant by the preponderance of the evidence in the charge is merely a guide to the jury as one of the methods whereby they can weigh and dispose of sharp conflicts when they have trouble in sifting the testimony and the witnesses are equally credible. But they may disbelieve any witness or regard the one side as more reasonable and satisfactory. It is not for the court to say in passing upon their verdict there is more testimony offered for the defendant on a particular state of facts than the plaintiff has introduced. If there is sufficient evidence to raise a substantial issue of fact, it is for the jury, and not for the court, whether it preponderates for plaintiff. S. A. & A. P. Ry. Co. v. Manning, 20 Tex. Civ. App. 504, 50 S. W. 179; Martin v. St. Louis, etc., Ry. Co., 56 S. W. 1011.

[6] It is contended by assignments 4 and 5 that the verdict is excessive; that it shows the result of prejudice and passion. There is no fact stated or circumstance urged to show that the passion of the jury was aroused, or that they were prejudiced, and we cannot, under the facts in this case, hold as a matter of law that the jury was prejudiced.

On the question that the verdict is excessive, the appellant quotes from a very small portion of the father's testimony. The facts show the boy unusually large for his age; wore clothes for 11 or 12 year old boy; was intelligent; was attending school; assisted his father, who drove a laundry wagon, to deliver packages after his father got home. The parents had a cow and sold from $9 to $12 worth of milk per month that the boy delivered; was a great help to his mother, who was sick a great deal, and she depended upon him, after school, to help her. He did help her, and helped to play with the baby, that was very delicate, giving his mother great help and assistance. She has two little girls. Although young, he was performing valuable service to his parents, who were very poor. The boy was doing his part, and the parents would be entitled to his services until he was an adult. It was all for the jury then to say whether, under the circumstances, he would thereafter and in their old age continue to contribute to their support. At date of the death of the boy the father was 49, and the mother going on 32 years of age. The facts were all before the jury, and we cannot, from anything shown, disturb their verdict.

The principle laid down in G., H. & S. A. R. R. v. Pigott, 54 Tex. Civ. App. 367, 116 S. W. 841, is in point here. There he was nearly an adult; but we can see no reason to apply a different rule to this case because of the child's tender years. The parents would be entitled to his services had he lived until he arrived at the age of 21 years, and, as in Pigott Case, it was for the jury to say under the circumstances whether thereafter he would further contribute to their support.

We see no error assigned that requires a reversal, and the cause is affirmed.