**KUNTZ et al. v. SPENCE et ux.***

No. 12563.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 14, 1931.

On Appellees' Motion for Rehearing Jan. 9, 1932.

On Appellants' Motion for Rehearing Feb. 13, 1932.

*Writ of error granted.

414

T. R. Boone, E. T. Duff, and Clyde Brannan, all of Wichita Falls, for appellants.

Davenport & Crain and W. E. Fitzgerald, all of Wichita Falls, for appellees.

DUNKLIN, J.

During a visit of Mrs. Letha Spence and her minor child, Toy Spence, in the home of Mr. J. Earle Kuntz and wife, Mrs. Vera Kuntz, in the city of Wichita Falls, Mrs. Kuntz started to a store in her automobile for the purpose of purchasing groceries. Toy Spence, 3 years of age, was placed in the back seat of the automobile by Mrs. Kuntz before she backed the same out of the driveway. The car was then backed out into the street, and, when it suddenly stopped near the opposite side of the street, one of the doors came open, through which the child fell to the street, and injuries sustained by striking the hard surface resulted in her death.

This suit was instituted by Mr. Sam B. Spence and wife, Mrs. Letha Spence, to recover damages against J. Earle Kuntz and wife, Mrs. Vera Kuntz, and the Employers' Casualty Company for the death of their child, Toy Spence. In their pleadings plaintiffs claimed damages aggregating $26,500 as follows: $1,000 for the funeral expenses of the child; $10,000 for loss of services of the child during the period of her minority; and $15,000 for contributions she would have made to plaintiffs in money and property after she had reached the age of 21 years. From a judgment in plaintiffs' favor, the defendants have prosecuted a writ of error.

The case was tried before a jury, and the

following are the special issues submitted to them with their findings thereon:

"1. Do you find from a preponderance of the evidence that the accident at the time and place in question was not unavoidable? Answer: Yes.

"2. Do you find from a preponderance of the evidence that the failure, if any, of the defendant, Mrs. J. Earle Kuntz, to inspect the right rear door of the automobile to see that it was closed before starting said automobile at the time and place in question was negligence, as that term has been defined to you? Answer: Yes.

"3. Do you find from a preponderance of the evidence that such negligence, if any, of the defendant, Mrs. J. Earle Kuntz, was a proximate cause of the injury to Toy Spence? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the manner in which the defendant, Mrs. J. Earle Kuntz, backed the automobile at the time and place in question was negligence? Answer: Yes.

"5. Do you find from a preponderance of the evidence that such negligence, if any, in backing said automobile was a proximate cause of the injury to Toy Spence? Answer: Yes.

"6. From a preponderance of the evidence what amount of money, if any, if paid now in cash, would reasonably compensate the plaintiffs for the loss of the earnings, if any, of their child, Toy Spence, from the time of the injury until she reached the age of 21 years, if she lived that long? Answer: o (nought).

"7. From a preponderance of the evidence, what amount of money, if paid now in cash, would reasonably compensate the plaintiffs for the loss of contributions of money or property, if any, which the deceased Toy Spence would have been reasonably expected to make to the plaintiffs after she reached the age of 21 years, if she lived that long? Answer: $5,000.00."

The judgment rendered, after reciting the verdict, concluded as follows:

"And it further appearing to the court from the evidence that the defendant Employers' Casualty Company had before the date of the accident, issued its policy of insurance to J. Earle Kuntz, providing that it would pay any damage caused by the said car not to exceed $5,000.00 to one person.

"And it further appearing to the court that said policy was in full force and effect on the date that said Toy Spence was injured and that the defendant should pay any and all damages assessed against the said J. Earle Kuntz, in the amount of $5,000.00; and it further appearing to the court from the uncontradicted testimony that said Sam B. Spence and Mrs. Letha Spence, have paid out for actual funeral expenses $176.30, and that the same was reasonable and necessary for the burial of said Toy Spence, the infant of Sam B. Spence and Mrs. Letha Spence, and that they are entitled to recover said amount from J. Earle Kuntz and Mrs. J. Earle Kuntz.

"And it further appearing to the court from the answers submitted that the defendant, Employers' Casualty Company, had before the date of the accident to Toy Spence, issued its policy covering a certain car belonging to the defendant J. Earle Kuntz and that said policy provided that said defendant Employers' Casualty Company would pay all sums which the assured defendant J. Earle Kuntz should become liable to pay as damages imposed upon him by law for bodily injury, including death, accidentally sustained by any person or persons as caused by the ownership, maintenance and use of the automobile described herein. And it further appearing to the court from the answers of the jury that the defendant J. Earle Kuntz, the Assured, and Mrs. J. Earle Kuntz, defendant, by reason of the answers herein submitted has become liable to pay the plaintiffs herein, Sam B. Spence and Mrs. Letha Spence the sum of $5,000.00.

"It is therefore ordered, adjudged and decreed by this court that the plaintiffs, Sam B. Spence and Mrs. Letha Spence, do have and recover of and from the defendants J. Earle Kuntz, Mrs. J. Earle Kuntz and Employers' Casualty Company, jointly and severally, the sum of $5,000.00.

"It is further ordered, adjudged and decreed by the court that the plaintiffs, Sam B. Spence and Mrs. Letha Spence, in addition to the above amount, do have and recover of and from J. Earle Kuntz, and Mrs. J. Earle Kuntz alone the sum of $176.30.

"It is further ordered, adjudged and decreed by the court that the cost herein incurred be and the same is adjudged against the defendants J. Earle Kuntz and Mrs. J. Earle Kuntz, and not against the defendant Employers' Casualty Company."

The issues of negligence found by the jury, upon which they made their findings, were duly alleged in plaintiffs' pleadings, with further allegations that such negligence was the proximate cause of the death of the child.

The basis of the alleged liability of the Employers' Casualty Company consisted of a policy of insurance which had been issued by that company to the defendant J. Earle Kuntz, which was held by him and was in full force and effect at the time the accident occurred. That policy covered insurance against bodily injuries, and also injuries to the automobile owned by the insured resulting from various causes.

The defendants presented a plea of misjoinder of causes of action, in that the

suit against J. Earle Kuntz and wife was for tort, and that against the insurance company was upon a contract; and further because, as contended by defendants, the policy sued on was one for indemnity to the assured only, and did not embody direct liability to the plaintiffs, and therefore would not inure to plaintiffs' benefit. In support of their assignment of error to the action of the court in overruling that plea, appellants have cited 1 Texas Jurisprudence, § 42, p. 653. If the contract of insurance was one of liability to the plaintiffs and not merely indemnity to the defendants Kuntz and wife—a question to be hereinafter discussed—then we believe that under the authorities cited there was no error in overruling the plea of misjoinder. We shall quote provisions from that authority as follows: "While recognition is given to the general rule that a cause of action ex delicto and a cause of action ex contractu may not be joined in the same suit, under the liberal practice prevailing joinder of such causes is permitted if they have arisen out of the same transaction or if they relate to the same subject matter and are dependent mainly upon the same evidence. In other words causes arising in tort and in contract may be joined when they are so connected that they may be conveniently and appropriately litigated together. * * * And it has been held that a cause of action for debt may be joined with a cause sounding in tort where both causes relate to the same transaction or where there is privity of interest of the parties in regard to the same subject matter."

Numerous authorities are cited in support of that text, to which may be added the later decision of Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423; American Automobile Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534.

Whether or not the policy was one of liability to the plaintiff or indemnity only to the assured must be determined by the following provisions contained in it:

### "Agreement 'A'

### "Bodily Injury Liability.

"To pay all sums which the Assured shall become liable to pay as damages imposed upon him by law for bodily injury including death at any time resulting therefrom (herein called 'Bodily injury') accidentally sustained by any person or persons if caused by the ownership, maintenance or use of the automobile described in the Declarations for the purpose therein stated. The Company's limit of liability, regardless of the number of Assured, as respects each automobile described, for bodily injury to or death of one person, shall be as first set forth in Item 1, Paragraph C, of the Declarations and subject to that limit for each person its total liability on account of any one accident resulting in bodily injury to or death of more than one person, shall be as second set forth in said Item."

Agreement B in the policy, and many other provisions relating thereto, is insurance against "property damage" done to the automobile, which are not material to any issue in this case.

Other paragraphs in the policy read as follows:

"In connection with agreements A and B the company further agrees:

"(a) To investigate and defend in the name and on behalf of the Assured any suit seeking damages for such bodily injury or property damage even if such suit is groundless, false or fraudulent.

### "Determination of Company's Liability for Accident.

"(3) No recovery against the company shall be had under agreements A or B until the amount of loss or expense shall have been determined, either by final judgment against the Assured after actual trial in an action defended by the Company or by a written agreement of the Assured, the claimant, and the Company, nor in either event unless suit is instituted within the time herein limited.

### "Notice of Accident under Agreements A and B

"(10) In the event of accident covered under agreements A and B of this policy, written notice shall be given, by or on behalf of the Assured, to the Company or to any of its authorized agents as soon as is reasonably possible thereafter, irrespective of whether or not any injury or damage is apparent at the time. Such notice should contain information respecting the time, place and circumstances of the accident, with the name and address of the injured and any available witnesses. If such information is not reasonably obtainable, particulars sufficient to identify the Assured shall constitute notice. The Assured shall keep the Company advised respecting further developments in the nature of claims or suits when and as they come to his knowledge. The Assured shall cooperate with the Company and, upon the Company's request shall assist in effecting settlement, securing evidence, and the attendance of witnesses, but the Assured shall not voluntarily make any payment, assume any obligation or incur any expense other than for immediate surgical relief, except at his own cost."

### "Bankruptcy and Insolvency.

"(17) The bankruptcy or insolvency of the Assured shall not relieve the company of liability under agreements A or B hereof. Any

person, or his legal representatives, who shall obtain final judgment against the Assured because of any such bodily injury, or injury to or destruction of property, may proceed against the Company under the terms of this policy to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto. Nothing in this policy shall give to any person or persons claiming damages against the Assured any right of action against the Company except as in this paragraph provided. The Company reserves the right to settle any claim or suit, and to make such investigation or negotiation as may be deemed expedient by the company."

Without undertaking to discuss each and all of the foregoing provisions, we believe it to be clear that the policy should be construed as one of liability and not merely one of indemnity. Even under the last-quoted paragraph of the policy it is expressly provided that any person who shall recover a final judgment against the assured because of any bodily injury should have the right to recover the same judgment against the insurance company, the amount of recovery not to exceed the limit of the amount of liability provided in the policy. And for that reason alone we can perceive no reasonable ground for denying plaintiff the right to sue both the defendants in the same action and thus avoid a multiplicity of suits.

In volume 5, Texas Jurisprudence, pp. 660, 661, cited by appellants, the announcement is made that a person who is injured by the operation of a vehicle on which an insurance policy is carried has no right of action against the insurer if the policy is one merely to indemnify and hold harmless the insured, but it is further there said: "The obligation and measure of liability of the insurer are of course to be determined by inspection of the provisions of the policy."

That such is the rule cannot be questioned. But that rule has no application here in the determination of the question whether or not the policy is one of liability or of indemnity, and we believe the conclusion we have just reached is supported, not only by reason, but also by the decisions in the following cases: American Automobile Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534; Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423.

The policy embodies these further provisions:

### "Misrepresentation and Fraud.

"(6) This entire policy shall be void if the Assured has concealed or misrepresented any material facts or circumstances concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

### "Lien or Mortgage.

"(7) Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage, or other encumbrances specifically set forth and described in Paragraph D of the Declarations, this Company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage or other encumbrance.

### "Title and Ownership.

"(8) Except as to any lien, mortgage, or other encumbrance specifically set forth and described in Paragraph D of the Declarations, this company shall not be liable for loss or damage to the automobile described, unless otherwise provided by agreement in writing added hereto, if the interest of the Assured in the subject of this insurance be or become other than unconditional and sole lawful ownership, or if the subject of this insurance has ever been stolen or unlawfully taken prior to the issuance of this policy and not returned to the lawful owner prior to the issuance of this policy, or in case of transfer or termination of the interest of the Assured other than by death of the Assured, or in case of any change in the nature of the insurable interest of the Assured in the property described herein, either by sale or otherwise, or if this policy or any part thereof shall be assigned before loss. * * *

"The automobile described is fully paid for by the Assured and there is no lien, mortgage or other encumbrance thereon, except as follows: None other. * * *

"This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the Assured agrees that its terms embody all agreements then existing between himself and this Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this Company shall have power to alter or waive any of the terms of this policy unless such alteration or waiver be made by endorsement attached hereto signed by the President and Secretary; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so endorsed. This policy shall be void in event of violation by Assured of any agreement, condition or warranty contained herein or in any endorsement now or hereafter attached hereto."

The evidence showed that at the time the insurance policy was issued the defendant J. Earle Kuntz owed on the purchase price of the automobile a balance of approx-

imately $844, evidenced by promissory notes in the sum of $47 each, payable monthly, all of which, except six or seven, had been paid off at the time of the trial. The car had been purchased by Mr. Kuntz from the Dixie Motor Company; the total consideration being $1,394, $550 of which was paid in cash. And the evidence of title was shown by an instrument in writing stipulating that it was sold by that company to Kuntz for the consideration stated. Although that bill of sale contained a stipulation that title to the property should not pass to the purchaser until the consideration was fully paid, we believe it to be clear that title did pass subject only to a chattel mortgage for the unpaid purchase price, under provisions of article 5489, Rev. Civ. Statutes; contrary to the contention made by appellants that the assured held only a conditional title to the car.

Appellants contend further that, since the statement contained in the policy that the automobile had been fully paid for by the assured, and that there was no lien or encumbrance against it was untrue, the entire policy was thereby rendered void by reason of the last quoted provision therein. In support of this contention appellants rely upon such decisions as International Ind. Co. v. Duncan (Tex. Civ. App.) 254 S. W. 233; Home Ins. Co. v. Puckett (Tex. Com. App.) 27 S.W.(2d) 111.

The testimony showed without controversy that, when Mr. Kuntz took out this policy, no written application was made therefor containing any statement to the effect that the car was unincumbered; nor did he make any such statement orally to the agent of the insurance company at the time the policy was taken out. Mr. Kuntz further testified without contradiction that, if he had been questioned as to that by the agent, he would have had no objection to telling him the truth. Nor did the policy contain any provision specifically warranting the truth of the statement contained in the policy that the car was incumbered.

It is a familiar rule that the terms of a policy of insurance will be strictly construed favorably to the insured; and that warranties will not be extended to include anything not necessarily embodied in their terms. Reppond v. National Life Ins. Co. of America, 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, 15 Ann. Cas. 618; Phœnix Assurance Co. of London v. Munger Improved Cotton Machine Mfg. Co., 92 Tex. 297, 49 S. W. 222.

It will be observed that in the provisions of subdivision 6 of the policy, under title "Misrepresentation and Fraud," it is said that the policy shall be void if the assured "has concealed or misrepresented any material facts or circumstances concerning this insurance or the subject matter thereof." That is a general provision, while in the next subdivision 7, under the heading "Lien or Mortgage," it is provided that the company will not be liable for "loss or damage to any property insured hereunder while subject to any lien, mortgage or other encumbrance" not set forth in the policy. And in subdivision 8, under the heading of "Title and Ownership," it is provided that the company will not be liable for loss or damage to the automobile if the ownership of the assured be anything less than an unconditional title. It is thus apparent that the untrue statement contained in the policy that the car was unincumbered or that Mr. Kuntz's title thereto was in any sense unconditional was material only to the issue of liability for loss or damage to the car; it being a familiar rule that general terms of a contract will be controlled in their application by specific provisions. It is further apparent that at all events, whether or not the automobile was incumbered or unincumbered at the time the policy was taken out and at the time the accident occurred, was not material to the risk incurred by the issuance of the policy against the bodily injuries, such as provided for in paragraph A of the policy and on which plaintiffs' suit was based, even though it could be said that the policy should be construed as warranting the truth of the statement therein contained, to the effect that the automobile was unincumbered. On this point we believe that the decision in Phœnix Ins. Co. v. Munger Improved Cotton Machine Mfg. Co., cited above, to be conclusive.

Mrs. Maude Rainwater was introduced as a witness for the plaintiffs. She testified that she witnessed the accident from her residence across the street from that of Mr. Kuntz; that the accident happened about 5:30 o'clock in the afternoon; that she saw Mrs. Kuntz get in the car and take the children in with her; that, after the children were placed in the car, Mrs. Kuntz slammed the door and jumped in; that, after she entered the car, she backed out of the driveway which was sloping towards the street. She further testified as follows: "She moved out quite rapidly. I was watching her when she backed out, I saw every move. I was sitting on my front porch, in the swing. As she backed out she was not watching the children; she was watching her driving. She backed out to beyond the center of the street, I think to about three or four feet to the opposite curb. When she stopped the car she stopped too suddenly, and the car jerked at the time it was stopped. She backed out of the driveway, and after getting into the street she put on her brakes and as she did so the car jolted, that was while she was still turning in the street. She made two jolts, the first one no doors came open, but when she got near the opposite curb the door did come open."

Error has been assigned to the action of the trial court in overruling defendants'

objection to the statement by the witness that "when she stopped the car she stopped too suddenly," on the ground that the same was a conclusion of the witness upon an issue to be determined exclusively by the jury. We do not believe there was any reversible error in that ruling, since the evidence shows conclusively that the sudden stopping of the car did cause the door to fly open, as a result of which the child fell out, and therefore it follows, necessarily, that the car was stopped too suddenly. 22 Corpus Juris, 527, and authorities there cited; Humphries v. La. Ry. & Irr. Co. of Texas (Tex. Com. App.) 291 S. W. 1094; Tutie v. Kennedy (Mo. App.) 272 S. W. 117.

In connection with the issues submitted to the jury for their guidance in determining those issues, the trial court gave the following instruction:

"To guide you in answering the special issues herein submitted, I give you the following definitions: 'Negligence' is the doing of that which an ordinary prudent person would not have done under the same or similar circumstance, or the failure to do that which an ordinary prudent person would have done under the same or similar circumstances.

" 'Proximate cause' is that cause which in a natural and continuing sequence, unbroken by any new or independent cause produces an event or injury and without which such event or injury would not have occurred.

" 'New and Independent Cause' as used in the definition of proximate cause above, is that cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable results of the original act or omission, if any, and produces a different result that could not have been reasonably anticipated.

" 'Negligence' is the proximate cause of any injury only when such injury is the natural and probable result of such negligence, and when in the light of the surrounding circumstances the injury, or a similar one, ought to have been foreseen by a person of ordinary care and prudence."

■ There is no merit in the objection made by defendants to the definition of proximate cause, on the ground that it failed to "allow and permit the jury to take into consideration the foreseeableness of this injury," since that element was embodied in the further instruction that negligence "is the proximate cause of any injury only when such injury is the natural and probable result of such negligence, and when in the light of the surrounding circumstances the injury, or a similar one, ought to have been foreseen by a person of ordinary care and prudence."

Furthermore, Mrs. Kuntz testified that she put the Spence child and another on the back seat of the car with no one else accompanying them on that seat, and that, when she did so, the door on the opposite side of the car looked to be closed, but that she did not examine it, and that, after she backed the car out into the street, that door flew open and the Spence child fell out. Under such circumstances, Mrs. Kuntz must have foreseen the danger of the child falling out of the car in the event the door did fly open.

■ Nor was there any reversible error in the failure of the court to define "ordinary care" as used in the last paragraph of the instruction, since the constituent elements of ordinary care had already been embodied in the definition of the term "negligence."

■ After the jury had received the charge of the court and had retired to consider the verdict, and while considering the same, they sent into the court the following request in writing: "Please send insurance policy to jury room introduced in evidence. Signed J. M. Fulcher, foreman." The defendants objected to a compliance with the request so made, on the ground that the policy contained numerous provisions which would be prejudicial to the rights of the defendants, such as the limits of $5,000, $10,000, and $1,000, and the respective premiums on the policy and because it was the province of the court and not the jury to construe the policy; and because the jury might reach the conclusion that they had a right to allow plaintiff a recovery of $5,000 as fixed in the policy as a limit of liability of the insurance company.

Error has been assigned to the action of the court in overruling that objection and sending the policy to the jury room for their consideration. Appellants admit in their briefs that the policy was introduced in evidence, but there is no showing as to whether or not a part only was read to the jury. Article 2193, Rev. Civ. St., expressly provides that the jury may take with them in their retirement any written evidence, but that, if a part only of a document has been read to the jury, the jury cannot take that part, unless it is detached from the rest of the document. It is clear that plaintiffs had the right to read that portion of the policy which established liability of the insurance company for the damages claimed, including the stipulation that the limit of liability for the death of a person should be $5,000. All other provisions of the policy relate solely to the insurance on automobiles, and we fail to perceive how any of those provisions could have an effect with the jury prejudicial to either of the defendants. Accordingly, no reversible error is shown by the assignment now under discussion.

■ Another complaint is made of misconduct of the jury, based on testimony of some of them taken on hearing the motion for new trial that during their deliberations some of them mentioned their experiences with their car doors coming open while driving.

Those discussions occurred while the jury was considering the issue of whether or not the accident in controversy was unavoidable. However, the testimony shows that the discussion was just in a general way without any showing that it operated to the prejudice of appellants. Indeed, an inference to the contrary might well be indulged. One of the jurors further testified as follows: "I think there was something said about this being a friendly suit between Mr. Spence and Mr. Kuntz. * * * We discussed the question a long time about having to find Mrs. Kuntz guilty of negligence in order to collect the insurance."

In answer to questions by counsel for defendants, Mr. Kuntz testified as follows: "Sam Spence and I have been close friends for about five years and we are together quite a bit. Our families visit back and forth."

That testimony was evidently introduced for the purpose of having some bearing on the defense, and the defendants are in no position now to complain of the existence of that friendly relation between Mr. Spence and Mr. Kuntz. The discussion of the jury about having to find Mrs. Kuntz guilty of negligence in order to collect the insurance was but a mental process of reasoning indulged by the jury on a question of law in reaching their verdict, which is not sufficient to vitiate the verdict in the absence of some overt act in connection therewith. See Bradley v. Texas & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861 and authorities there cited.

Before the charge of the court was submitted to the jury, the defendants objected to issue No. 7, on the ground that "it allows and permits the jury to consider whether said plaintiff might or should have reasonably expected to receive from the said Toy Spence, without taking into consideration whether said child would have lived or not, and without taking into consideration whether she would have made these contributions or not, and it further assumed that said Toy Spence would have made said contributions to the plaintiff in this case."

Error has been assigned to the action of the court in overruling that objection. It will be noted that this objection was rather vaguely expressed, and did not specifically raise the point that the court should first have submitted as a separate and independent issue whether or not the plaintiffs had reasonable expectation of receiving the contributions referred to after the child reached the age of majority, which unquestionably would have been the correct procedure. However, we believe the objection made was sufficient to suggest the importance of submitting the issue in that manner. And we have reached the conclusion that the court erred in failing so to do. Especially is this true in view of the fact that the only testimony introduced to prove damages for expected contributions after the child

should have reached the age of majority was, to say the least, of doubtful sufficiency to support the damages found; consisting only of the facts that the child was unusually bright and intelligent, of an affectionate nature, very affectionate towards her parents, strong and healthy, and without any infirmities of mind or body.

In Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 562, 32 A. L. R. 1183, in an opinion by Chief Justice Cureton, the following language is used: "It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge."

To the same effect are many other decisions such as Kirby v. Estill, 75 Tex. 484, 12 S. W. 807; Gulf, C. & S. F. Ry. Co. v. Hodges, 76 Tex. 90, 13 S. W. 64; Texas Ref. Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131, and other decisions there cited; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570. Rev. Civ. St. art. 2189. Accordingly, the assignment of error now under discussion is sustained, and by reason thereof the judgment of the trial court is reversed and the cause remanded.

### On Appellees' Motion for Rehearing.

The objections made by counsel for appellants to the submission to the jury of special issue No. 7 have been re-examined, and the same will now be set out in full, and were as follows:

"Defendants except and object to the submission of Special Issue No. 7, because of each and all of the reasons heretofore given to Special Issue No. 6. Further because it allows and permits the jury to consider whether said plaintiff might or should have reasonably expected to receive from the said Toy Spence without taking into consideration whether said child would have lived or not, and without taking into consideration whether she would have made these contributions or not, and it further assumes that the said Toy Spence would have made said contributions to the plaintiffs in this case, and further allows and permits the jury to take into consideration for the loss or contribution, whether cash, money or property, love, affection, care and attention and as to limiting the same to the monetary value thereof, and the jury might consider that contributions means or is understood to mean the attention and care that a child might give to its parents in their old age, regardless of whether it is money or not or property, and also allows the jury to consider that the said contributions means the affection and attention that the said Toy

Spence might have given to the said plaintiffs in this case, and, therefore, is more onerous upon the defendant than the law justifies or warrants, and in this connection the defendants here and now request the court to define the word 'contributions' as used in Special Issue No. 7, and also as used in Special Issue No. 6, and further define the phrase 'reasonably prudent' as used in Special Issue No. 7, and in this connection the defendants request the court to submit to the jury, that is, the defendant, Employers' Casualty Company, alone, the issue as to whether or not at the time said accident occurred, and at the time said policy introduced in evidence was written, said automobile was in fact and in truth the property of J. Earle Kuntz, the defendant, and further requests the court to submit to the jury whether or not said J. Earle Kuntz had at the time the policy was issued and continuously up to the time of the accident in question a mortgage on said car, and whether or not said car had only been conditionally sold to J. Earle Kuntz, and whether or not said J. Earle Kuntz executed a conditional sales contract, dated November 12, 1929, introduced in evidence in this case, wherein said conditional sales contract provided that the title to said authomobile was in the General Motors Acceptance Corporation until the entire sum or amount due under said conditional sales contract had been paid."

The objections urged to special issue No. 6 embodied some of those quoted above, and were of like tenor and effect.

And, upon more mature consideration, we have reached the conclusion that none of those objections was sufficient to suggest to the court the point made in the argument presented in appellants' briefs that special issue No. 7 was multifarious and improperly submitted two special issues, to wit, whether or not, if Toy Spence had not been killed in the accident in controversy, she would have made contributions in property or money to the support of her parents after she should have reached the age of majority; and, second, the present value of such contributions, if any. Indeed, we believe that the objections made were so numerous and in such general terms that they would likely tend to obscure and cause the court to overlook the vice of multifariousness in special issue No. 7.

And, in answer to the doubt intimated by us in our original opinion of the sufficiency of proof to support the finding by the jury of damages awarded, counsel for appellees have called our attention to the absence of any complaint made by appellants in their motion for new trial in the trial court, and of any assignment of error presented here complaining that the evidence was insufficient to support the finding of damages awarded by the jury; also to the provisions of articles 4671 and 4675, Revised Civil Statutes, giving a right of action to parents for the death of their children resulting from the negligence of another person, and article 4677, reading as follows: "The jury may give such damages as they think proportionate to the injury resulting from such death. The amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

And counsel have also called our attention to the following decisions affirming recoveries by parents for damages of the same kind as were awarded in this case which were recovered by parents for the deaths of minors, some of which were of like tender ages as Toy Spence; all by reason of the fact that under the provisions of article 4677 a determination of such damages was exclusively within the province of the jury, such as: Houston City St. Ry. Co. v. Sciacca, 80 Tex. 350, 16 S. W. 31; Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Schaff v. Young (Tex. Civ. App.) 264 S. W. 582; Southwestern Portland Cement Co. v. Bustillos (Tex. Civ. App.) 216 S. W. 268; San Antonio Traction Co. v. Young (Tex. Civ. App.) 141 S. W. 572; St. Louis, B. & M. R. Co. v. Watkins (Tex. Civ. App.) 245 S. W. 794; Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432, and Galveston, H. & N. Ry. Co. v. Olds (Tex. Civ. App.) 112 S. W. 787, 788.

For the reasons stated, the appellees' motion for rehearing is granted; our former orders sustaining the assignment of error to the submission of special issue No. 7 and reversing and remanding the cause to the trial court for another trial are set aside; the assignment last mentioned is overruled, and the judgment of the trial court is affirmed; our former opinion as to all other assignments of error being adhered to and reaffirmed.

On Appellants' Motion for Rehearing.

In their motion for rehearing, appellants now pray for our consideration as one of their assignments of error here the following alleged error embodied in their motion for new trial in the court below: "The court erred in entering up judgment in this case for the sum he did enter same because said judgment is excessive and not warranted by the evidence introduced on the trial hereof."

That assignment was not brought forward in appellants' briefs, filed here, but they now for the first time pray that the same be considered by this court and that by reason thereof the judgment of the trial court be reversed independently of other assignments of error.

Under the rulings of our Supreme Court in Clonts v. Johnson, 116 Tex. 489, 294 S. W. 844, and Natkin Engineering Co. v. Ætna Casualty & Surety Co. (Tex. Com. App.) 37 S.W. (2d) 740, that assignment has been waived by appellants, and cannot now be considered.

And, after due consideration of all other grounds therein contained, the motion of appellants for rehearing is overruled.